THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ESAU ANDERSON, Defendant-Appellant.

First District (4th Division)   No. 62599

Opinion filed October 13, 1976.

James J. Doherty, Public Defender, of Chicago (Richard D. Kharas, Assistant
Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Eugene J.
Rudnik, Jr., and R. Burke Kinnaird, Assistant State's Attorneys, of counsel), for the
People.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the
court:

Esau Anderson was charged with the offense of unlawful use of
weapons in violation of section 24—1(a)(10) of the Criminal Code (Ill.
Rev. Stat. 1975, ch. 38, par. 24—1(a)(10)). After a bench trial, the
defendant was found guilty and sentenced to 1 year of probation and
fined $250. Anderson appeals from his conviction and raises the following

issues on review: (1) whether a consent to search by his co-defendant was voluntarily given or was the product of coercion or duress of the arresting officer, and (2) whether the prosecution proved the corpus delicti of the crime aliunde defendant's post-arrest admissions.

The facts reveal that on May 7, 1975, Louis Moisan, a uniformed police officer, was at 118th Street and Michigan Avenue when he and his partner were flagged down by a cab driver who told the officers that he was threatened by a man with a gun in a plaza at 115th and Michigan. The cab driver related the circumstances surrounding the altercation in the parking lot and described how the man pulled his jacket open, brandished a weapon, and threatened the cab driver with bodily harm. After refreshing his recollection from the case report, the officer testified that the cab driver described the vehicle the defendant was in as a blue 1973 Ford station wagon. According to the witness, the cab driver told the officer the car was a quarter of a block ahead of them, and the defendant was driving the vehicle.

After receiving this information, the officer made a U-turn, proceeded south, and stopped the station wagon at 119th and Michigan. The defendant, the driver of the vehicle, was asked to get out of the car and the officer conducted a custodial search of his person. As the officer searched Anderson, the cab driver walked up and when he was told that there was no weapon found on Anderson, he insisted that he had been threatened with a gun so the other three people in the vehicle were asked to step out of the car. When the three passengers were out of the car, Deron Jefferson, one of the occupants, was told why the car was stopped and the officer asked her to open her purse. The officer testified that he did not search the woman's person, nor did he have his gun drawn; he examined the contents of her purse, and he found the gun inside her purse.

After the motion to suppress the evidence was denied and defense counsel stipulated to the evidence produced at the hearing on the motion to suppress, Officer Moisan continued his testimony. The officer testified that after searching Deron Jefferson, the co-defendant, he found a blue steel revolver in her purse. Immediately after discovering the gun, Anderson and Jefferson were arrested and taken to the station. Anderson was "Mirandized" and stated that he understood his rights. According to the officer, the defendant admitted that the weapon belonged to him, that he purchased it at the Dolton Gun Shop and produced a receipt to corroborate this fact, that he had given it to Ms. Jefferson, and that he didn't want to get her in trouble. The defendant also admitted that he threatened the cab driver, that they argued in the plaza at 119th Place and Michigan Avenue, and that the gun might have been displayed while his jacket was pulled back. Then during cross-examination by Anderson's

attorney, the officer admitted that the gun was not recovered from the person of the defendant. And during cross-examination by Ms. Jefferson's attorney, the officer testified that she never made an attempt to conceal or shield the contents of her purse. On redirect, the officer testified that the zipper to Ms. Jefferson's purse was closed and that she opened it.

The next witness called at the trial was Ms. Jefferson. She testified that on May 7, 1975, a weapon was found in her possession, but explained that the first time she saw it was when the officer removed it from her purse. The witness also stated that she left her purse on the seat while placing groceries inside the car. The defendant did not take the stand to testify.

■■ The first question to be considered is whether co-defendant Jefferson, who was not in custody, voluntarily consented to the search of her purse. If so, this obviated the necessity to be warned of her constitutional rights since she permitted the intrusion which resulted in the discovery of a gun. The weapon was admitted into evidence and used by the State to establish the defendant's criminal culpability. The defendant argues that the atmosphere was not congenial when he and the occupants of the car were searched, and submits that his co-defendant permitted the intrusion because she "* * * didn't know what to do." Consequently, the defendant contends that the officer's request to look into her purse had the force of law behind it, thereby making her action involuntary because it was the product of the coercion and duress of the arresting officer. The State, on the other hand, maintains that the officer acted in a reasonable manner without force, coercion, or intimidation, and that he asked Ms. Jefferson to open her purse and she complied without fear for her personal safety. The litigants are in agreement that the question of whether the consent was voluntary or the product of duress or coercion, expressed or implied, is to be determined from the totality of the surrounding circumstances, and they cite *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 227, 36 L. Ed. 2d 854, 93 S. Ct. 2041, as authority for this proposition. In addition, they point out that *Schneckloth* was followed by our supreme court in *People v. DeMorrow* (1974), 59 Ill. 2d 352, 320 N.E.2d 1. Although the trial court questioned whether co-defendant Jefferson voluntarily consented to the search, it held that the officer's actions were reasonable under the circumstances. Whether consent has been given in the particular case is a factual matter to be determined in the first instance by the trial court, and where the evidence on the issue is in conflict this court will accept the finding below unless it is clearly unreasonable. (*People v. DeMorrow* (1974), 59 Ill. 2d 352, 358.) After reviewing the record, we hold, under the circumstances, that the officer's conduct was reasonable.

■■ The defendant's next contention is that the State failed to prove the corpus delicti of the crime beyond a reasonable doubt. He argues that

section 24—1(a)(10) is not violated by discovery of a weapon in the purse of a co-defendant, and submits that there is no evidence to establish his culpability other than the post-crime admissions that he made to the arresting officer at the police station. In Illinois the corpus delicti of a crime has to be proved by extrinsic evidence other than defendant's confession or admissions. (*People v. Holmes* (1976), 38 Ill. App. 3d 122, 347 N.E.2d 407.) We think an examination of the record reveals sufficient facts to establish the corpus delicti of the crime. The defendant admitted that he had an altercation with a man at 115th and Michigan, admitted that he had a gun in his belt which might have been observed during the argument, and admitted placing the gun in his co-defendant's purse. All of the defendant's admissions are corroborated by evidence that came out during the trial. The officer testified that he was stopped by a cab driver on 115th and Michigan, which is where the argument allegedly took place, and the driver told him about a man with a gun. After traveling a short distance to apprehend the assailant, the officer stopped the defendant and searched him along with the other occupants of the car. Although no gun was found on the defendant, this fact is understandable since he placed it in his co-defendant's purse, a gun was found on defendant Jefferson. Consequently, the fact that a gun was found in the place where defendant admits that he put it establishes that he probably had it in his possession at one time. In our opinion, the corpus delicti of the crime was proved beyond a reasonable doubt by evidence other than defendant's post-arrest admissions.

For these reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DIERINGER and BURMAN, JJ., concur.