(No. 106367.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MICHAEL DIGGINS, Appellee.

*Opinion filed October 8, 2009.*

Lisa Madigan, Attorney General, of Springfield, and Kevin W. Lyons, State's Attorney, of Peoria (Michael A. Scodro, Solicitor General, and Michael M. Glick and Erica Seyburn, Assistant Attorneys General, of Chicago, and Norbert J. Goetten and Terry A. Mertel, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Tiffany Ritchie, of Schierer & Ritchie, LLC, of Peoria, for appellee.

Victor D. Quilici, of Schiller Park, for *amicus curiae* Illinois State Rifle Association.

JUSTICE BURKE delivered the judgment of the court, with opinion.
Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

## OPINION

Section 24—1.6(c)(iii) of the Criminal Code of 1961 provides that a person is not guilty of aggravated unlawful use of a weapon if that weapon is "unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card." 720 ILCS 5/24—1.6(c)(iii) (West 2006). In the case at bar, we are asked to determine whether the center console of a vehicle is a "case" within the meaning of this provision. For the reasons that follow, we conclude that it is.

### Background
Following a jury trial in Peoria County, defendant Michael Diggins was convicted of aggravated unlawful use of a weapon in violation of section 24—1.6(a)(1) of

the Criminal Code. Evidence presented at trial revealed the following.

Sergeant Michael Boland testified that on March 24, 2006, he was on patrol in Peoria, Illinois, with his partner Officer Lane, when he observed a black Chevrolet Suburban make a right turn without signaling. Boland directed the car, driven by defendant, to pull over. After defendant stopped, Boland asked defendant for his driver's license and proof of insurance. Defendant retrieved his insurance card from the glove compartment and handed it to Boland. When Boland again asked defendant for his driver's license, defendant replied that he had a Firearm Owner's Identification Card (FOID) card. Boland then asked defendant if he had any guns in the vehicle, and defendant responded, "Yes, I do." Defendant pointed to the center console of his vehicle and said they were "in there." Boland testified that he told defendant not to reach into the console and then he and Lane handcuffed defendant and defendant's passenger and removed them from the vehicle. Boland then entered the vehicle.

According to Boland, the lid to the center console was ajar, although there was a key in the console's lock. When Boland opened the lid, he observed two unloaded handguns: a .45-caliber semiautomatic black pistol and a chrome .357 Magnum revolver. He also observed a magazine loaded with eight .45-caliber rounds and six rounds of .357 ammunition. A duffel bag, located in the rear compartment area of the vehicle, contained two boxes with 42 rounds of .45-caliber ammunition and 46 rounds of .357-caliber ammunition. Boland testified that he did not remove the guns at that time, but waited for other officers to arrive to take photographs. After photographs were taken, Boland removed the guns from the console and found defendant's wallet, which contained his driver's license and FOID card.

Defendant testified that the console was closed and locked when Sergeant Boland executed the traffic stop. According to defendant, when Boland asked him for his license, he went to the console to retrieve it, but the console was locked. Defendant asked his passenger to get the console keys from the glove compartment. His passenger got the keys and gave them to defendant. Defendant then unlocked the console, pushed the button, and raised the lid. At that time, defendant told Boland he had a FOID card and driver's license, which were in his wallet in the console, but that he was not going to reach into the console because he had guns in there. According to defendant, he put his hand in the air, at which time Boland grabbed it, pulled it out the window, and handcuffed him. Defendant testified that, when he was pulled over, he was about to drive back to Florida, and that he carried his guns in the console when traveling because the highway was "dangerous."

Defendant's passenger, Willie Moore, also testified. He confirmed that defendant asked him for the keys to the console, that he retrieved them from the glove compartment and gave them to defendant, and that defendant then unlocked the console. After defendant unlocked the console, Moore said, defendant advised Boland he had guns in the console.

At the close of the evidence, defense counsel sought a jury instruction, based on section 24—1.6(c)(iii), that a person is not guilty of aggravated unlawful use of weapons if the weapons are enclosed in a "case, firearm carrying box, shipping box, or other container" by a person who has been issued a currently valid FOID card. The trial judge refused the instruction.

The trial judge also prohibited defendant from asserting, in closing argument, that the console was a "case" or "other container" under section 24—1.6(c)(iii). However, the State was allowed to argue that the console was not a "case."

During jury deliberations, the jury sent a note to the trial judge, asking, "What is the legal definition of a case?" Over defense objection, the trial judge instructed the jury that the console was not a "case" under Illinois law. Shortly thereafter, the jury returned its verdict, finding defendant guilty of aggravated unlawful use of weapons. The court sentenced defendant to 30 months' imprisonment.

On appeal, the appellate court reversed and remanded for a new trial, finding that the center console of a vehicle is a "case" within the meaning of section 24—1.6(c)(iii). 379 Ill. App. 3d 994. In so holding, the appellate court rejected the finding in *People v. Cameron*, 336 Ill. App. 3d 548 (2003), that a glove compartment was not a "case" or "other container" because it was not portable. The court below determined there is nothing in the plain language of any of the terms in section 24—1.6(c)(iii), whether considered separately or together, to indicate the legislature intended for the exception to apply only to portable receptacles. Relying on a standard dictionary, the appellate court defined the term "case" as "a box or receptacle to contain or hold something" that "completely encloses the weapon." Based on this definition, the appellate court held that the center console was a "case" within the meaning of section 24—1.6.

We granted the State's petition for leave to appeal pursuant to Supreme Court Rule 315 (210 Ill. 2d R. 315). We also granted leave to the Illinois State Rifle Association (ISRA) to file an *amicus curiae* brief on behalf of defendant.

## Analysis

The statutory provision at issue, aggravated unlawful use of a weapon, provides in pertinent part:

"(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in

any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode or fixed place of business any pistol, revolver, stun gun or taser or other firearm; [and]
***

(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or

(B) the firearm possessed was uncased, unloaded and the ammunition for the weapon was immediately accessible at the time of the offense[.]

* * *

(c) This section does not apply to or affect the transportation or possession of weapons that:

* * *

(iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card." 720 ILCS 5/24—1.6 (West 2006).

The legislature did not define the word "case" as used in section 24—1.6(c)(iii) and this appeal turns on the proper interpretation of that term. We review this question of law *de novo*. *Kankakee County Board of Review v. Property Tax Appeal Board*, 226 Ill. 2d 36, 51 (2007).

The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 26 (2005). The best indicator of the legislature's intent is the language of the statute, which must be accorded its plain and ordinary meaning. *King*, 215 Ill. 2d at 26. "We construe statutes as a whole, so that no part is rendered meaningless or superfluous." *People v. Jones*, 223 Ill. 2d 569, 581 (2006). Where the language of the

statute is clear and unambiguous, this court will apply the statute as written without resort to aids of statutory construction. *In re R.L.S.*, 218 Ill. 2d 428, 433 (2006).

Because the term "case," used in section 24—1.6(c)(iii), is not defined, we assume the legislature intended the term to have its ordinary and popularly understood meaning. *People v. Ward*, 215 Ill. 2d 317, 325 (2005). The plain and ordinary definition of "case" is: "a box or receptacle to contain or hold something (as for carrying, shipping, or safekeeping)." Webster's Third New International Dictionary 346 (1993). Examples given in the dictionary included "a silver cigarette [case]," "12 bottles in a [case]," and "a display [case] in a meat market." A "box" is defined as: "a rigid typically rectangular receptacle often with a lid or cover in which something nonliquid is kept or carried" (Webster's Third New International Dictionary 263 (1993)) and a "receptacle" is defined as something that "receives and contains something" (Webster's Third New International Dictionary 1894 (1993)).

In *Cameron*, the appellate court interpreted the phrase "other container" within section 24—1.6(c)(iii). The *Cameron* court found that not only were a "firearm carrying box" and "shipping box" portable receptacles, but a "case" was as well. Invoking the doctrine of *ejusdem generis*, the court concluded, based on the common element of portability among the items in section 24—1.6(c)(iii), that an "other container" must also be portable. Because a glove compartment is fixed, and not portable, the *Cameron* court held that it was not an "other container" within the meaning of section 24—1.6(c)(iii).

We, like the appellate court, find the *Cameron* court's analysis flawed. The *Cameron* court never attempted to define "case"; it merely assumed a "case" must be portable. While a firearm carrying box and shipping box

might contain an inherent element of portability, under its plain and ordinary definition, "case" does not. For example, a display case in a meat market or elsewhere is not portable in the commonly understood meaning of portability.[1] Accordingly, not all "cases" are portable. Because there is no common attribute of portability amongst the terms utilized in section 24—1.6(c)(iii), the *Cameron* court's analysis is incorrect.

The State does not argue that portability is essential to the definition of "case" or that the doctrine of *ejusdem generis* applies. Rather, the State invokes other canons of statutory construction, primarily, the doctrine of *noscitur a sociis*. This doctrine provides that "[t]he meaning of questionable words or phrases in a statute may be ascertained by reference to the meaning of words or phrases associated with it." *Hayes v. Mercy Hospital & Medical Center*, 136 Ill. 2d 450, 477 (1990) (Calvo, J., dissenting, joined by Ward and Clark, JJ.). The State maintains that, under this doctrine, "case" is best defined as a container specific to a firearm since the other terms in the statute reference a firearm. The State's use of this interpretative principle does not persuade us.

The State's argument that *noscitur a sociis* resolves the case at bar fails for the same reason that *ejusdem generis* fails. There is nothing in the language of the statute from which one could conclude that the legislature intended the terms "shipping box" and "other container" to be interpreted only in reference to firearms. Thus, there is nothing in the overall statutory scheme to suggest that the legislature intended for the various types of receptacles to be firearm specific.

Moreover, the term "firearm" does not precede all of the terms or phrases, *i.e.*, the statute does not read

---

[1]"Portable" means "capable of being carried : easily or conveniently transported." Webster's Third New International Dictionary 1768 (1993).

*"firearm* case, carrying box, shipping box or other container." Likewise, the statute does not read "case, carrying box, shipping box, or other *firearm* container." Had section 24—1.6(c)(iii) been drafted in either of these ways, it might be reasonable to interpret it to require that all specified types of receptacles be interpreted only in reference to firearms. Based on the actual language of the statute, we conclude that the doctrine of *noscitur a sociis* simply does not apply here.

The State also argues that if we define "case" broadly to mean any receptacle which holds something, we would render "firearm carrying box" and "shipping box" superfluous since these terms would necessarily fall within the definition of case. However, if we adopted the State's argument that all of the terms should be interpreted only in reference to firearms, the phrase "firearm carrying box" would be rendered superfluous. Thus, the State's argument is flawed.

For its final argument, the State relies on the legislative history to give meaning to the term "case." However, we need not resort to the legislature history because we find the plain language of section 24—1.6(c)(iii) unambiguous.

Unpersuaded by the State's arguments, we conclude that the legislature used the broad general term "case" unmodified. Giving the word "case" its plain and ordinary meaning, as we must, permits but one conclusion: the term "case" in section 24—1.6(c)(iii) includes any portable or nonportable receptacle and need not be interpreted only in reference to firearms.

Based on the foregoing, we find, in the case at bar, that the center console of a vehicle falls within the ordinary definition of case. A center console is a receptacle that contains or holds something. As such, we find that defendant's conduct falls within the exception set forth in section 24—1.6(c)(iii). In so finding, we note that

our result is controlled by the plain language of section 24—16(c)(iii) as enacted by the legislature. We are not at liberty to depart from the language employed. Whether the statute is wise or the best means to achieve the desired result are matters left to the legislature, not this court. Accordingly, we affirm the appellate court's conclusion that the trial court erred in refusing defendant's proposed jury instruction based on section 24—1.6(c)(iii) and erred in refusing to permit defendant to argue in closing argument that the center console was a "case" within the meaning of section 24—1.6(c)(iii).

Our determination that the center console is a "case" within the meaning of section 24—1.6(c)(iii) does not end this case. A factual question remains as to whether the exception is applicable based on whether the firearms at issue here were "enclosed" in the center console. For this reason, we remand the matter to the circuit court for a new trial.

In light of our decision, we must consider whether a new trial would subject defendant to double jeopardy. See *People v. Jones*, 175 Ill. 2d 126, 134 (1997); *People v. McDonald*, 125 Ill. 2d 182, 201 (1988). Officer Boland testified that the console was ajar; defendant and his passenger testified it was closed. Viewing the evidence in the light most favorable to the prosecution, it is possible that the jury could have believed Officer Boland's testimony over that of defendant and his passenger. Accordingly, we find there was sufficient evidence from which the jury could have found defendant guilty beyond a reasonable doubt and, thus, double jeopardy does not preclude a new trial. See *People v. Hope*, 116 Ill. 2d 265, 279 (1986). However, we note that nothing in our opinion should be construed as a finding regarding defendant's guilt that would be binding upon remand.

### Conclusion

We affirm the judgment of the appellate court, which

reversed the judgment of the circuit court and remanded the cause for further proceedings.

*Affirmed.*