# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Harris*, 2012 IL App (1st) 100077

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JERRY HARRIS, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-10-0077 |
| Filed | February 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for three counts of aggravated unlawful use of a weapon based on not having a valid firearm owner's identification card, possessing an uncased, loaded, and immediately accessible firearm, and knowingly possessing on his person a firearm on a public street were reversed on appeal, where defendant did have a valid FOID card, the firearm at issue was "encased" in the closed and latched center console of defendant's car, and the only testimony corroborating defendant's statement that he retrieved the weapon from the console and fired it on a public street was an anonymous eyewitness's hearsay statement to a police officer that was insufficient to corroborate defendant's statement for purposes of proving *corpus delicti*. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-1693; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Darrel F. Oman, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Anne L. Magats, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE HARRIS delivered the judgment of the court, with opinion.

Justices Cunningham and Connors concurred in the judgment and opinion.

## OPINION

¶ 1     Defendant, Jerry Harris, appeals his bench trial convictions of three counts of aggravated unlawful use of a weapon and his sentence of 12 months' probation. On appeal, Harris contends (1) his conviction under count IV, which alleged he did not have a valid firearm owner's identification (FOID) card, should be vacated because he did have a valid FOID card; (2) his conviction under count I should be vacated because his gun was "encased" in the center console of his car; (3) his conviction under count III should be vacated because it required proof that Harris had a firearm "on or about his person" upon a public street and the State failed to prove the *corpus delicti* of this offense; (4) as to count III, the aggravated unlawful use of a weapon (AUUW) statute violates Harris's constitutional right to bear arms; and (5) his $5 court system fee should be vacated where he was not convicted for a violation of the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq.* (West 2006)). We reverse Harris's convictions under counts I, III, and IV. We also vacate the assessment of the $5 court system fee.

¶ 2                                   JURISDICTION

¶ 3     The trial court sentenced Harris on December 2, 2009, and he filed a timely notice of appeal on December 31, 2009. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 603 and 606, governing appeals from a final judgment of conviction in a criminal case entered below. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 603 (eff. Oct. 1, 2010); R. 606 (eff. Mar. 20, 2009).

¶ 4                                   BACKGROUND

¶ 5     Harris was charged with four counts of aggravated unlawful use of a weapon. Count I alleged that Harris "knowingly carried in any vehicle, a firearm, *** and the firearm possessed was uncased, loaded, and immediately accessible at the time of the offense." Count

II alleged that Harris "knowingly carried in any vehicle, a firearm, *** and he had not been issued a currently valid firearm owner's identification (FOID) card." Count III alleged that Harris "knowingly possessed on or about his person a firearm, upon a public street, *** and the firearm possessed was uncased, loaded, and immediately accessible at the time of the offense." Count IV alleged that Harris "knowingly possessed on or about his person a firearm, upon a public street, *** and he had not been issued a currently valid" FOID card.

¶ 6        Before trial, Harris filed a motion to quash his arrest and suppress evidence. At the hearing, Officer Combs testified regarding what a concerned citizen at the crime scene had told him. Defense counsel objected, but the trial court allowed the testimony to show Officer Combs' state of mind. The trial court ultimately denied the motion, finding that although police did not have a warrant to search or probable cause, Harris gave his consent to search his car.

¶ 7        At the bench trial, Officer Combs testified that on December 14, 2008, he and his partner, Officer Caraga, responded to a call of shots fired at 7440 South Wabash in Chicago. Shortly after arriving on the scene, Officer Combs spoke with "a concerned citizen" who wished to remain anonymous. The witness spoke to the officer through a gangway window of a single-family home located 100 to 125 feet from the scene of the shooting. The witness pointed to a parked car, and when officers approached this car, they found Harris sitting in the driver's seat.

¶ 8        The officers conducted a field interview with Harris, and he acknowledged that he owned the car and consented to a search of the car. During the search, Officer Combs opened the center console and recovered a black .45-caliber semiautomatic weapon. He placed the weapon on the front seat for the evidence technician, Officer Edwin Jones. Harris conceded that he owned the gun. The parties stipulated that if called to testify, Officer Jones would state that he was called to 7517 South Wabash, where he entered a vehicle and observed a .45-caliber semiautomatic handgun sitting in the driver's seat. He later examined the gun and concluded that it contained six live rounds. He inventoried the weapon under number 11528394.

¶ 9        Harris was taken into custody and read his *Miranda* rights. While in the police car, Harris told Officer Hardman that a green Pontiac had pulled up and started firing. One of the shots hit his friend, Keith Jones. Harris then ran to his car, retrieved his gun, and returned fire. At the police station, in the presence of Officers Hardman, Combs, and Caraga, Harris again stated that he had gone to his car, retrieved his gun, and returned fire. After the State rested, Harris moved for reconsideration of his motion to quash his arrest and suppress evidence, and for a directed finding. The trial court denied Harris's motions.

¶ 10        For his defense, Harris recalled Officer Combs as a witness. He stated that after the interrogation, Harris was allowed to use the restroom. Officer Combs also prepared a police report which stated that a concerned citizen told him that an individual "went to his car before the shooting, retrieved a black object and then went back to his car and returned the black object after the shooting." He prepared the report "close in point in time to the events it purports to describe." No objection was made to this testimony at trial. Officer Combs also

acknowledged that he is a patrol officer who does not conduct gun-residue testing, but he knew that Harris's washing his hands in the restroom would negate the results of such a test.

¶ 11     Harris testified in his defense. He stated that on December 14, 2008, he and his friends, Jones, Al, and Kanik, attended a party at a nightclub on Wabash until about 2:30 or 3 a.m. As they headed toward their parked cars, someone fired nine shots, striking Jones. The offenders then fled in a car. Harris ran to Jones and called 911. He also called a family friend, Janine Robinson, and informed her of the shooting. When police arrived, Harris gave them a description of the shooter.

¶ 12     Police gave Harris permission to leave the scene. As he was leaving, officers stopped him, threw him to the ground, and took the car keys from his pocket. Using the alarm key, the police found Harris's car. Harris never gave police permission to search his car. Officers recovered the gun from a console, which required pressing a button to open the compartment. Harris testified that he had placed the gun in the console about a week earlier because he had had visitors at his home, including children. He had forgotten about the gun and did not remember whether it was loaded. Harris had a valid FOID card on his person at the time and denied that officers questioned him after his arrest. On cross-examination, Harris denied telling police that he retrieved the gun from his car and fired shots at the person who shot Jones.

¶ 13     Janine Robinson testified that she had been at the party at Harris's home when he removed the gun and that she received a call from Harris on December 14, 2008, informing her that Jones had been shot. Jones testified that he was shot while walking with his friends from the nightclub to the car. He fell to the ground on his back, and he remained in that position until an ambulance transported him from the scene. Jones testified that Harris was with him the entire time, and he did not see Harris go to his car to get a gun.

¶ 14     The trial court found the officers' testimony "credible and compelling beyond a reasonable doubt." However, it acquitted Harris of count II because evidence at trial showed that he had a valid FOID card at the time of the offense. The trial court convicted Harris on counts I, III, and IV. Harris filed a posttrial motion to vacate his convictions which the trial court denied. Harris filed this timely appeal.

¶ 15                                              ANALYSIS

¶ 16     Harris first contends that his conviction under count IV, which alleged he did not have a valid FOID card, should be vacated because the unrebutted evidence at trial showed that he had a valid card. The State concedes this point because the trial court acquitted Harris on count II, which was also based on Harris's alleged lack of a FOID card. Therefore, we vacate Harris's conviction under count IV.

¶ 17     Harris also argues that his conviction under count I should be vacated. Count I alleged that Harris "knowingly carried in any vehicle, a firearm, *** and the firearm possessed was uncased, loaded, and immediately accessible at the time of the offense." Harris contends that since the police recovered his gun from the closed center console of his car, it was properly encased within the meaning of the statute. See 720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West

-4-

2008). In *People v. Holmes*, 241 Ill. 2d 509, 519 (2011), our supreme court held that a backseat armrest "which contained a cover and latch, falls within the meaning of a case" under the statute. The center console of a vehicle is also a "case." *People v. Diggins*, 235 Ill. 2d 48, 57 (2009). The State concedes that since the gun found in Harris's vehicle was in the closed and latched center console, it was encased.

¶ 18    The State argues in the alternative that rather than reverse Harris's conviction on count I, this court should reduce the conviction to misdemeanor unlawful use of a weapon and remand the cause for resentencing. "[A] defendant may be convicted of an offense not expressly included in the charging instrument if that offense is a lesser-included offense of the crime expressly charged." *People v. Rowell*, 229 Ill. 2d 82, 97 (2008). Furthermore, Supreme Court Rule 615(b)(3) allows a reviewing court to reduce the degree of the convicted offense where the evidence does not support a conviction beyond a reasonable doubt of the greater offense. Ill. S. Ct. R. 615(b)(3).

¶ 19    The State contends that it proved the elements of misdemeanor unlawful use of a weapon because the handgun was not broken down, contained live rounds, and was immediately accessible since Officer Jones found the handgun sitting in the driver's seat of the vehicle. Officer Combs, however, testified that he initially found the gun encased in the closed center console of the car. Only after recovering the gun did he place it on the driver's seat for the evidence technician, Officer Jones. No other testimony was presented on whether the weapon was immediately accessible. Based on the record, we cannot say that the evidence at trial proved beyond a reasonable doubt that the gun was loaded and was immediately accessible. See *People v. Holmes*, 241 Ill. 2d 509, 523 (2011). Harris's conviction on count I is reversed.

¶ 20    Harris next contends that this court should vacate his conviction under count III because it requires proof that Harris had a loaded, uncased firearm "on or about his person" upon a public street, and the only evidence supporting this element was his statement to police. "[P]roof of an offense requires proof of two distinct propositions or facts beyond a reasonable doubt: (1) that a crime occurred, *i.e.,* the *corpus delicti*; and (2) that the crime was committed by the person charged." *People v. Sargent*, 239 Ill. 2d 166, 183 (2010). However, proof of the *corpus delicti* may not rest solely on a defendant's statement or confession. *People v. Furby*, 138 Ill. 2d 434, 446 (1990). If defendant's statement is part of the *corpus delicti*, the State must also present independent evidence corroborating the statement. *People v. Cloutier*, 156 Ill. 2d 483, 503 (1993). This evidence itself need not prove the crime beyond a reasonable doubt, but must tend to confirm the elements of defendant's statement. *Sargent*, 239 Ill. 2d at 183-84. "If the defendant's confession is corroborated, the corroborating evidence may be considered together with the confession to determine whether the crime, and the fact the defendant committed it, have been proven beyond a reasonable doubt." *Sargent*, 239 Ill. 2d at 183.

¶ 21    Here, the only evidence corroborating Harris's statement that he retrieved the gun from his car and returned fire on the street was Officer Combs' testimony. However, his testimony was based on a police report detailing an anonymous eyewitness's statement that he saw Harris run to his car, retrieve a black object, then return the black object to the car after the shooting. This court in *People v. Lesure*, 271 Ill. App. 3d 679 (1995), addressed whether an

eyewitness's hearsay statement to police constitutes sufficient evidence to corroborate a defendant's statement for purposes of establishing *corpus delicti*. In *Lesure*, at the hearing on defendant's motion to quash arrest and suppress evidence, defense counsel objected to portions of testimony as hearsay and the trial court ruled that any hearsay evidence would be admitted solely for consideration of the motions, and not for purposes of trial. *Lesure*, 271 Ill. App. 3d at 681-82. However, the only evidence corroborating the defendant's statement that he possessed a rifle was the testimony of a police officer stating that a man told him the defendant pointed a rifle at him and threatened to kill him. The man did not testify at trial. *Lesure*, 271 Ill. App. 3d at 682. The court held that such hearsay evidence "totally fails to satisfy the State's burden of proof." *Lesure*, 271 Ill. App. 3d at 682. Accordingly, we hold that the anonymous eyewitness's hearsay statement to Officer Combs was not sufficient to corroborate Harris's statement for purposes of proving *corpus delicti*.

¶ 22    The State disagrees, arguing that *People v. Anderson*, 42 Ill. App. 3d 1040 (1976), allows such evidence to corroborate a defendant's statement. In *Anderson*, the defendant was convicted for unlawful use of a weapon. At the hearing on defendant's motion to suppress, Officer Moisan testified after refreshing his recollection from the case report. He stated that a cab driver flagged him down and said that a man with a gun threatened him at 115th Street and Michigan Avenue. The cab driver and the man had an altercation in a parking lot and the man pulled open his jacket, brandished a weapon, and threatened bodily harm. The cab driver further stated that the offender was driving a vehicle about a quarter of a block ahead. Officer Moisan made a U-turn and headed in that direction. He came upon a station wagon at 119th and Michigan and stopped the vehicle. While performing a custodial search of the defendant, the officer found no weapon. The cab driver came up and insisted he had been threatened with a gun, so the officer asked the three other people in the station wagon to get out of the car. The officer asked one of the occupants, Deron Jefferson, to open her purse and inside he found a gun. *Anderson*, 42 Ill. App. 3d at 1041.

¶ 23    The trial court denied the motion to suppress and defense counsel stipulated to the evidence produced at the hearing. *Anderson*, 42 Ill. App. 3d at 1041. Officer Moisan then continued his testimony. He testified that after the discovery of the gun, the defendant and Jefferson were arrested and taken to the station. After receiving his *Miranda* warnings, the defendant admitted that the gun found in Jefferson's purse belonged to him and he had threatened the cab driver after an argument. He also admitted that he might have displayed the gun when he pulled his jacket open and that he gave the gun to Jefferson. *Id.* Jefferson testified that she had left her purse on the car seat while loading groceries into the car, and the first time she saw the gun was when Officer Moisan opened her purse. *Anderson*, 42 Ill. App. 3d at 1042. Neither the defendant nor the cab driver testified at trial.

¶ 24    The defendant argued on appeal that since the gun was recovered in Jefferson's purse and not on his person, no evidence established that he possessed the weapon and committed unlawful use of a weapon other than his admissions made at the police station. *Anderson*, 42 Ill. App. 3d at 1043. The *Anderson* court disagreed, finding that Officer Moisan's testimony corroborated the defendant's admissions. *Id.* Furthermore, the gun was found in Jefferson's purse and the defendant had admitted that he gave the gun to Jefferson. It could be inferred

from the evidence that the defendant had possession of the gun at one time. *Id.* The court held that the *corpus delicti* of the crime was proved beyond a reasonable doubt by extrinsic evidence other than the defendant's testimony. *Id.*

¶ 25     In *Anderson*, however, the cab driver who was the victim was present and reiterated his allegation that he had been threatened with a gun when Moisan stopped the defendant's vehicle and searched its occupants. Furthermore, defense counsel stipulated to the hearsay evidence corroborating the defendant's statement. *Anderson*, 42 Ill. App. 3d at 1041, 1043. Our case is distinguishable in that the statement was made by a witness, not the victim, and the anonymous witness did not make his allegations in front of Harris. Also, Harris's counsel did not stipulate to the substance of the anonymous witness's statement to Officer Combs. We are not persuaded that *Anderson* supports the State's argument here.

¶ 26     The State also argues that we should consider the hearsay statement because Combs' testimony was brought out by Harris's trial counsel in his case in chief, and no one objected to the introduction of this evidence. "[W]hen hearsay evidence is admitted without an objection, it is to be considered and given its natural probative effect." *People v. Banks*, 378 Ill. App. 3d 856, 861 (2007). However, the probative effect of a statement given to police by an anonymous witness is minimal without evidence corroborating the witness's information. See *People v. Nitz*, 371 Ill. App. 3d 747, 751-52 (2007). Here, the only evidence corroborating the hearsay statement was the fact that Officer Combs found a gun in Harris's car. No other witness claimed to have seen Harris on the street with the weapon. More importantly, the witness's statement to Officer Combs, no matter how it was introduced by counsel, is a hearsay statement. As we articulated in *Lesure*, "[s]uch evidence totally fails to satisfy the State's burden of proof" in establishing *corpus delicti*. *Lesure*, 271 Ill. App. 3d at 682.

¶ 27     Harris next argues that the aggravated unlawful use of a weapon (AUUW) statute is unconstitutional because it criminalizes conduct protected by the second amendment right to bear arms. Due to our disposition of this appeal, we need not consider his constitutional argument at this time.

¶ 28     Harris's final contention is that this court should vacate a $5 court system fee assessed to him pursuant to section 5-1101(a) of the Counties Code (55 ILCS 5/5-1101(a) (West 2006)). He argues that the plain language of the statute limits application of the fee to violations of the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq.* (West 2006)), and he was not convicted of such a violation. The State agrees that the fee should be vacated because Harris was not convicted of violating the Illinois Vehicle Code. Therefore, we order that the $5 court system fee be vacated.

¶ 29     For the foregoing reasons, the judgment of the circuit court is reversed. We also vacate the $5 court system fee.

¶ 30     Reversed.