2019 IL App (1st) 170669-U

No. 1-17-0669

Order filed October 23, 2019

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 7337 |
| | ) | |
| SAQUAN DAVIS, | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm, concluding defendant's incriminating statements coupled with the independent corroborating evidence presented at trial was sufficient to establish the *corpus delicti* of the offense.

¶ 2    Following a jury trial, defendant, Saquan Davis, was found guilty of aggravated unlawful use of a weapon and sentenced to one year in prison. Defendant appeals, arguing the State failed to prove him guilty beyond a reasonable doubt. We affirm.

¶ 3     The State charged defendant by indictment with aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (3)(A-5), (3)(C) (West 2016)) based on his possession of a loaded, uncased, immediately accessible handgun in a vehicle without having been issued a concealed carry license (CCL) or firearm owner's identification (FOID) card. The matter proceeded to a jury trial, at which the following evidence was presented.

¶ 4     Officer Albert Rangel testified that on April 19, 2016, he and his partner, Officer Adrian Rosiles, were on patrol, driving southbound on South Lafayette Avenue in Chicago near its intersection with 93rd Street. As the officers approached the intersection, the traffic light turned red, and the officers stopped the vehicle. A purple Jeep with tinted windows approached the intersection and stopped directly next to the officers' vehicle. Rangel observed the driver of the Jeep was not wearing his seatbelt and alerted Rosiles.

¶ 5     The light turned green and the officers immediately activated their emergency lights and pulled the Jeep over. Both officers exited their vehicle, and Rosiles shouted to the driver of the Jeep to lower the windows. The occupants of the vehicle complied, revealing four occupants inside the Jeep. Rangel approached the passenger side of the vehicle, and Rosiles approached the driver's window. Defendant was seated in the left rear passenger seat.

¶ 6     While Rosiles spoke with the driver, Rangel looked inside the vehicle and saw the bottom of a firearm with a magazine protruding from underneath a blue sweater on the back seat next to where defendant was seated. Rangel alerted Rosiles to the presence of the firearm by calling out "cuete," which is a slang term for firearm.

¶ 7     Rosiles then ordered the four occupants out of the vehicle one by one. Once the occupants were cleared from the vehicle, Rosiles reached into the backseat and pulled out a

semiautomatic handgun. Rosiles removed ammunition from the handgun, including a round from the chamber.

¶ 8      The four occupants were transported to the station, and defendant was placed in an interview room. Rosiles read defendant his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436 (1966)). Defendant waived his rights and told the officers the gun was his and he needed it for protection.

¶ 9      On cross-examination, Rangel testified that, when the Jeep was pulled over, he did not observe any of the occupants moving their hands so as to conceal anything. He did not see Rosiles put on gloves prior to removing the handgun from the vehicle, and Rosiles put the handgun in his cargo pocket, not an evidence bag. Rangel admitted he and Rosiles did not audio or video record defendant's statement and they did not have him sign a written statement. No fingerprint or deoxyribonucleic acid (DNA) testing was performed on the handgun.

¶ 10     Rosiles testified consistently with Rangel. He added that when he recovered the handgun, the barrel was pointed toward the front of the vehicle, angled slightly toward the driver seat, and the handle of the handgun was pointed toward the right side of the vehicle—away from where defendant was sitting. On cross-examination, Rosiles admitted he did not place gloves on his hands prior to handling the handgun, and he did not take any photographs of the gun or the Jeep at the scene. Rosiles testified he never saw defendant touch the gun or the sweater. Additionally, he did not have defendant sign anything indicating defendant had waived his *Miranda* rights.

¶ 11     Bob Radmacher testified he worked for the Illinois State Police firearm services bureau, which handles all incoming FOID card and CCL applications. Radmacher searched a database

using defendant's name and date of birth, which indicated defendant never applied for and was never issued a FOID card or CCL.

¶ 12    Detective William Levigne testified that on April 19, 2016, he was assigned to investigate this case. After speaking with Rosiles and Rangel, Levigne spoke with defendant and advised him of his *Miranda* rights. Defendant again waived those rights, and Levigne asked defendant if he knew why he had been arrested. Defendant told Levigne "it had to do with the gun that was found under the sweatshirt" in the backseat of the Jeep. Defendant told Levigne, "I took claim to the gun." Finding this statement "strange," Levigne asked defendant to clarify, and defendant stated "I guess it's mine." Defendant also told Levigne that he had the handgun in a different vehicle earlier in the day and needed the gun for "defense." Levigne testified the gun was not sent for fingerprint or DNA testing because the officers at the scene had handled it, possibly contaminating it, and because defendant's statement that the gun was his was believable.

¶ 13    Defendant elected not to present any evidence, and the jury found him guilty. Defendant filed a motion for new trial arguing, in part, the State failed to prove him guilty beyond a reasonable doubt. The trial court denied the motion and sentenced defendant to one year in prison.

¶ 14    On appeal, defendant contends the State failed to prove him guilty beyond a reasonable doubt. Specifically, defendant contends the State did not prove the *corpus delicti* where it failed to elicit sufficient independent corroborating evidence in addition to his admission the handgun belonged to him. We disagree.

¶ 15     When a defendant presents a challenge to the sufficiency of the State's evidence, "a reviewing court must determine whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted; emphasis in original.) *People v. Ross*, 229 Ill. 2d 255, 272 (2008). The reviewing court does not retry the defendant, and "the trier of fact remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence." *Id.* The mere fact that the trier of fact accepted certain testimony or made certain inferences based on the evidence does not guarantee reasonableness of the decision. *Id.* A criminal conviction will be set aside where the evidence is so improbable or unsatisfactory it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 16     "The *corpus delicti* of an offense is simply the commission of a crime. Along with the identity of the person who committed the offense, it is one of two propositions the State must prove beyond a reasonable doubt to obtain a valid conviction." *People v. Lara*, 2012 IL 112370, ¶ 17. Generally, the State must present more than the defendant's admission, confession, or out-of-court statement to prove the *corpus delicti*. *Id.* Thus, when a confession is used, in part, to establish the *corpus delicti*, the State must also provide independent corroborating evidence. *Id.* To comply with the *corpus delicti* rule, "the independent evidence need only *tend to show* the commission of a crime" but "need not be so strong that it alone proves the commission of the charged offense beyond a reasonable doubt." (Emphasis in original.) *Id.* ¶ 18.

¶ 17     To sustain defendant's conviction, the State was required to prove defendant knowingly carried "in any vehicle *** any pistol, revolver, *** or other firearm" that "was uncased, loaded,

and immediately accessible at the time of the offense" and had not been issued a currently valid CCL or FOID card. 720 ILCS 5/24-1.6(a)(1), (3)(A-5), (3)(C) (West 2016). Because defendant does not dispute the handgun at issue was uncased, loaded, and immediately accessible and he lacked a currently valid CCL or FOID card at the time of the offense, the relevant inquiry is whether the State proved defendant knowingly possessed the handgun. See *People v. Hannah*, 2013 IL App (1st) 111660, ¶ 27.

¶ 18    " 'Knowing possession' can be either actual or constructive." *Id.* ¶ 28. Here, defendant was not found in actual possession of the handgun and, therefore, the State had to present corroborating evidence that defendant constructively possessed it. See *id.* Constructive possession is proved where the defendant (1) had knowledge of the weapon's presence, and (2) exercised immediate and exclusive control over the area where the weapon was found. *Id.* The State may prove knowledge with evidence of a defendant's acts, declarations, or conduct from which it can be inferred he or she knew the contraband existed in the place where it was found. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. "Control is established when a person has the 'intent and capability to maintain control and dominion' over an item, even if he lacks personal present dominion over it." *Id.* (quoting *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992).

¶ 19    Our decision in *Hannah*, 2013 IL App (1st) 111660, is instructive. In *Hannah*, Chicago police officers entered an apartment to execute a search warrant and found the defendant, who had a prior felony conviction, a woman, and a child sitting on a bed in the only bedroom. *Id.* ¶ 11. The defendant and the woman were detained and moved to the living room and the police searched the apartment. *Id.* During the search, an officer recovered an uncased, loaded handgun from between the box spring and mattress on the bed. *Id.* In the living room, an officer asked the

defendant and the woman who owned the handgun, and the defendant responded it belonged to him. *Id.* The defendant and the woman were arrested and transported to the police station. *Id.* At the station, the defendant waived his *Miranda* rights and told an officer he had obtained the handgun in Indiana and it had been in his possession for approximately two years. *Id.* At defendant's bench trial, an officer testified the handgun was not tested for fingerprints and the defendant did not reach between the box spring and mattress for the handgun before the officers began searching the residence. *Id.* The trial court found defendant guilty of two counts of unlawful use of weapon by a felon. *Id.* ¶ 16.

¶ 20    On appeal, the defendant argued, in pertinent part, his conviction should be reversed pursuant to the *corpus delicti* rule because the State failed to provide any evidence to corroborate his statement he owned the handgun that was recovered from the apartment. *Id.* ¶ 22. We rejected the defendant's argument and affirmed his conviction. *Id.* ¶ 29. We found the State established the *corpus delicti* through both the recovered handgun and the defendant's incriminating statements. *Id.* We noted the fact the defendant was seated on the bed where the handgun was hidden made it immediately accessible to him. *Id.* Recognizing the woman was also sitting on the bed, we found the defendant did not have exclusive control over the handgun but, nevertheless, he had immediate control over the area where the handgun was found. *Id.* We concluded this evidence, when coupled with the defendant's confession, permitted a reasonable inference the defendant concealed the weapon where it was found. *Id.* Thus, we held the corroborating evidence tended to show the defendant unlawfully possessed the weapon. *Id.*

¶ 21    Here, Rosiles' and Rangel's testimony established defendant was seated in the Jeep's left rear passenger seat. Rangel observed the butt of a handgun and magazine protruding from under

a blue sweater located directly next to defendant. After the occupants of the Jeep were removed from the vehicle, Rosiles recovered an uncased, loaded semiautomatic firearm from under the blue sweater. We find this evidence, coupled with defendant's incriminating statements to Rosiles, Rangel, and Levigne, was sufficient to prove the *corpus delicti* of the offense. See *id.* Just as in *Hannah*, the fact defendant was seated directly next to where the handgun was partially concealed made it immediately accessible to him. In fact, the handgun was arguably more accessible than the handgun in *Hannah* given it was concealed by a sweater and not, as in *Hannah*, a mattress upon which the defendant, woman, and child were sitting.

¶ 22   While we cannot conclude defendant had exclusive control over the handgun given another individual was sitting next to him in the Jeep, the evidence suggests he had immediate control over the area where the handgun was found. See *id.*; see also *People v. Schmalz*, 194 Ill. 2d 75, 82 (2000) (two or more individuals may jointly possess an item if they share immediate and exclusive control over it). When coupled with his statements to Rosiles, Rangel, and Levigne, it would not be unreasonable to infer defendant concealed the weapon where it was found, and this evidence tended to show he unlawfully possessed the firearm. See *Lara*, 2012 IL 112370, ¶ 18 ("[T]he independent evidence need only *tend to show* the commission of a crime" but "need not be so strong that it alone proves the commission of the charged offense beyond a reasonable doubt."). Accordingly, we conclude the State presented sufficient corroborating evidence, which coupled with defendant's incriminating statements, proved the *corpus delicti*.

¶ 23   Defendant's reliance on *People v. Lesure*, 271 Ill. App. 3d 679 (1995), and *People v. Harris*, 2012 IL App (1st) 100077, is misplaced. In *Lesure*, the only evidence which corroborated the defendant's incriminating statements was an officer's hearsay testimony as to a

version of events given him by the victim. *Lesure*, 271 Ill. App. 3d at 682. In *Harris*, the only evidence to corroborate the defendant's incriminating statement was the officer's hearsay testimony regarding a statement he received from an anonymous eyewitness. *Harris*, 2012 IL App (1st) 100077, ¶ 21. In both cases, we found the hearsay testimony was insufficient to corroborate the defendants' incriminating statements for purposes of proving the *corpus delicti*, and we reversed the defendants' convictions. Here, the State provided admissible evidence, not hearsay testimony, which corroborated defendant's statements that he owned the gun found on the seat next to him and needed it for protection. Thus, *Lesure* and *Harris* are inapposite.

¶ 24    Defendant cites *People v. Davis*, 50 Ill. App. 3d 163 (1977), in support of his argument the State failed to present any evidence that defendant knowingly possessed the firearm other than his "uncorroborated and unmemorialized" incriminating statements to Rosiles, Rangel, and Levigne. In *Davis*, 50 Ill. App. 3d at 168, the court noted the factors from which knowledge of a weapon can be inferred are (1) the visibility of the weapon from the defendant's position in the car; (2) the defendant's position relative to the weapon; (3) the period of time in which the defendant had an opportunity to observe the weapon; (4) any gestures made by the defendant which indicate an effort to retrieve or hide the weapon; and (5) the size of the weapon. According to defendant, the evidence in this case, analyzed in light of these factors, was not sufficient to support a finding of knowing possession. Defendant contends there was no evidence the gun was visible from defendant's position, there was no evidence defendant was in the vehicle any longer than it took for Rosiles and Rangel to initiate and conduct the traffic stop, there was no evidence of any occupant moving furtively during the traffic stop, and the evidence showed the gun was small and no more than an inch was visible to Rangel when he approached

the vehicle. Moreover, defendant argues there was no testimony he ever touched the hand gun and no physical evidence such as fingerprints or DNA linking him to it.

¶ 25   Defendant's reliance on *Davis* is misplaced. The defendant in *Davis* did not, as defendant did here, make any incriminating statements from which his knowledge could be inferred and the court did not engage in an analysis of the proof of the *corpus delicti*. For these same reasons, the other cases relied upon by defendant, *People v. Wright*, 2013 IL App (1st) 111803, *People v. Bailey*, 333 Ill. App. 3d 888 (2002), and *People v. Ray*, 232 Ill. App. 3d 459 (1992), are also inapposite.

¶ 26   Defendant essentially asks this court to evaluate the corroborating evidence presented in this case, *i.e.* the location of the handgun directly next to defendant underneath a blue sweater, independently from his incriminating statements to Rosiles and Rangel and later to Levigne. However, case law dictates a defendant's incriminating statements must be evaluated together with the corroborating evidence to determine whether the State presented sufficient evidence to prove the *corpus delicti*. See *e.g.*, *Lara*, 2012 IL 112370, ¶¶ 45-47. In this case, defendant's incriminating statements coupled with the corroborating evidence presented by the State is sufficient to sustain defendant's conviction for aggravated unlawful use of weapon. Accordingly, we affirm the trial court's judgment.

¶ 27   For the reasons stated, we affirm the trial court's judgment.

¶ 28   Affirmed.