Docket No. 109130.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LEONARD HOLMES, JR., Appellant.

*Opinion filed April 7, 2011.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, Karmeier, and Theis concurred in the judgment and opinion.

Justice Garman specially concurred, with opinion.

## OPINION

Defendant was charged by information with two counts of aggravated unlawful use of a weapon. Count I alleged that defendant carried in his vehicle an "uncased, loaded, and immediately accessible" firearm. Count II alleged defendant carried in his vehicle a firearm and "had not been issued a currently valid Firearm Owner's Identification Card." A jury, in the circuit court of Cook County, returned a general verdict of guilty and the appellate court affirmed. No. 1–07–1490 (unpublished order under Supreme Court Rule 23). In this appeal, we must determine whether defendant's conviction for aggravated unlawful use of a weapon is proper under either count charged. For the reasons that follow, we answer that question in the negative and,

therefore, reverse the judgment of the appellate court.

## Background

The record reveals the following. On May 8, 2005, defendant, Leonard Holmes, a resident of Indiana, was stopped by Chicago police officers for a traffic violation on 115th Street in Chicago. At that time, a gun was recovered from a backseat armrest in his car. This armrest separated the two back seats and contained a storage compartment that closed with a latch. The compartment could be folded up into the seat or left in a down position. At the time the gun was recovered, the compartment was closed and latched.

On May 18, 2005, a two-count information was filed charging defendant with aggravated unlawful use of a weapon. The first count alleged that defendant carried an "uncased, loaded, and immediately accessible" firearm in his vehicle in violation of section 24–1.6(a)(1)(3)(A) of the Criminal Code of 1961 (720 ILCS 5/24–1.6(a)(1)(3)(A) (West 2004)). The second count alleged defendant carried in his vehicle a firearm "at a time when he was not on his own land or in his own abode or fixed place of business" and had "not been issued a currently valid Firearm Owner's Identification Card" in violation of section 24–1.6(a)(1)(3)(C) (720 ILCS 5/24–1.6(a)(1)(3)(C) (West 2004)).

Prior to trial, defendant filed a motion to suppress. At the hearing on defendant's motion, Officer Eric Gonzalez testified that he stopped defendant for a lane violation. At that time, Gonzalez was riding in a squad car with his two partners, John McCarthy and Wilfredo Lapitan. Gonzalez testified he approached the driver's side door and observed an open bottle of beer on the backseat passenger side floor. After defendant provided his license and insurance information, Gonzalez ordered defendant out of the car. According to Gonzalez, as defendant exited, he spontaneously commented, "Hold on, hold on. I'm just letting you know now I have a gun in the car." Gonzalez then took defendant into custody.

Officer Gonzalez testified that defendant told the police officers where the gun was located. Officer McCarthy retrieved the gun, unloaded it, and then handed it to Gonzalez. According to Gonzalez, the armrest was in the down position, but not open. He further

testified that defendant's driver's seat was "leaned back very far" and that defendant would have access to the armrest.

Defendant testified at the suppression hearing that the police officers stopped him, came up to the car, told him to turn the car off and get out, and advised him he had been stopped because of his tinted windows. Defendant and a friend who was riding with him were ordered out of the car. According to defendant, it was not until he was standing near the rear of his car that the police noticed the beer. Defendant testified that the beer was not open. Defendant further denied telling the police there was a gun in the car and, according to defendant, he never gave them consent to search his car.

Defendant admitted at the suppression hearing there was a gun in the backseat armrest. However, he testified that the armrest was folded up, not in the down position, as Officer Gonzalez stated. Defendant further testified the gun was not loaded. Rather, the police found the clip in his pants pocket after he had been arrested.

On cross-examination, defendant denied that his seat was reclined all the way back, but stated it was reclined somewhat due to his height–6 foot, 2 inches.

Officer Wilfredo Lapitan's testimony essentially confirmed Officer Gonzalez's testimony except that he provided no testimony as to the position of the armrest or whether the gun was loaded or not. The trial court denied defendant's motion to suppress and the matter proceeded to trial.

At trial, Officer Gonzalez testified that after stopping defendant, he and Officer McCarthy approached defendant's car, spoke with defendant, and asked for his license and insurance information, which defendant provided. Gonzalez said that, as he was speaking with defendant, he noticed an open bottle of beer in the backseat of the car. He then asked defendant to exit the car. At that time, according to Gonzalez, defendant made his spontaneous statement about the gun. Gonzalez stated that he immediately cuffed defendant, patted him down, and directed him to the rear of the car. Defendant told the officer he had an Indiana permit for the gun, which he did not have with him. Defendant then told Gonzalez where the gun was. At that time, McCarthy asked defendant's passenger to step out of the car. Gonzalez and McCarthy got into the car and McCarthy retrieved the

gun, unloaded it, and handed it to Gonzalez. Defendant was then placed under arrest.

On cross-examination, Officer Gonzalez admitted that all of defendant's windows were tinted. He stated he observed the beer bottle when he was standing outside the driver's side door. He stated the bottle was not inventoried.

After Officer Lapitan testified in accord with his testimony at the suppression hearing, the State rested.

Twice during the presentation of the State's case, defense counsel sought leave to offer defendant's Indiana handgun permit into evidence. Counsel argued this permit was a basis for dismissal of the charge of aggravated unlawful use of a weapon under count II because of a provision contained in the Firearm Owners Identification Card Act (FOID Card Act). 430 ILCS 65/2(b)(10) (West 2004). Under the FOID Card Act, an out-of-state resident who possesses a valid permit or license from his state is not required to obtain a FOID card. It was defendant's position that, because he possessed a valid permit from Indiana, he could not be prosecuted for aggravated unlawful use of a weapon. The trial court concluded, as a matter of law, that defendant's possession of an Indiana permit was not a substitute for a FOID card and, therefore, it was irrelevant. Accordingly, the trial court ruled that defense counsel could not enter defendant's permit into evidence.

Defendant then testified on his own behalf. He stated that, on the day of his arrest, it was Mother's Day, and he had been out to dinner with his wife and in-laws. After he dropped his wife off at home, he left Indiana with a friend to drop a gift off at his mother's home in Chicago. While returning home to Indiana, he was stopped by the Chicago police.

Defendant testified that Officer Gonzalez approached his car on the driver's side and immediately ordered him out of the car. Gonzalez did not ask for defendant's license or insurance. When defendant got out of the car, he was told to go to the back of his vehicle. Before doing so, defendant told the police there was a gun in the car for which he had a permit. At that time, according to defendant, Gonzalez yelled, "He's got a gun." Gonzalez grabbed defendant's belt buckle, handcuffed him, walked him to the rear of the car, and turned him

over to Officer Lapitan, who placed defendant in the squad car. Defendant further testified that he had just purchased the gun about three days before and that it was not loaded and that the clip was in his pocket.

According to defendant, Officers Gonzalez and McCarthy searched for the gun, could not find it and came back to him and asked where it was. Defendant told them it was in the back armrest. The police then retrieved the gun, came back to defendant, and asked where the clip was. Defendant told them it was in his pocket. The officers then recovered the clip from his pocket.

On cross-examination, defendant stated he put the gun in his car over the weekend because he planned to go to the range to learn how to shoot it since he had not yet fired it. He forgot the gun was in his car and only remembered after he left his house. When he remembered, he pulled over, unloaded the gun, and put it in the back armrest.

In rebuttal, the State called Officer McCarthy, who testified to confirm the other officers' version of the events.

During the jury instruction conference, defense counsel requested an instruction on the lesser-included offense of misdemeanor unlawful use of a weapon. See 720 ILCS 5/24–1 (West 2004). The trial court denied this request. The trial court also denied defendant's request to instruct the jury that, because he was a nonresident who was licensed to possess a firearm in his own state, he could lawfully carry a firearm in his vehicle.

The jury was given a single form listing both counts alleged against defendant. The jury returned a general verdict finding defendant guilty of aggravated unlawful use of a weapon. Defendant was later sentenced to 30 days in jail, followed by 18 months of probation.

The appellate court affirmed. No. 1–07–1490 (unpublished order under Supreme Court Rule 23). The appellate court first held that the trial court did not err in refusing the lesser-included jury instruction on misdemeanor unlawful use of a weapon. The court found that the jury could not rationally acquit defendant of the greater offense (aggravated unlawful use of a weapon) but find him guilty of the lesser offense (misdemeanor unlawful use of a weapon). The court then

-5-

found that the exception contained in section 2(b)(10) of the FOID Card Act for a licensed out-of-state resident could not be read into the unlawful use of weapons statute.

We granted the defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).


Analysis

Prior to addressing the merits of this appeal, we consider the State's motion, taken with the case, seeking to strike portions of defendant's reply brief. The State argues that defendant, for the first time in his reply brief, raised an alterative theory that the FOID Card Act does not provide reasonable notice that an out-of-state permit or license does not exempt one from prosecution for aggravated unlawful use of a weapon. The State contends that raising a new argument in a reply brief violates Supreme Court Rules 341(h)(7) and 341(j). Defendant maintains, however, that this argument is not new, but is in response to contentions made by the State in its brief.

Because we resolve this case on the grounds raised by defendant in his original brief, we do not consider the argument raised in the reply brief and need not decide whether it is made in response to an argument made by the State. Therefore, the State's motion to strike defendant's reply brief is denied as moot.


*Count I–Section 24–1.6(a)(1)(3)(A)*

Count I of the information charged defendant with aggravated unlawful use of a weapon based on carrying an "uncased, loaded and immediately accessible" firearm in his vehicle in violation of section 24–1.6(a)(1)(3)(A) of the Criminal Code of 1961 (720 ILCS 5/24–1.6(a)(1)(3)(A) (West 2004)). Section 24–1.6(a)(1)(3)(A) provides:

> "(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:
>
> (1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode or fixed place of business any pistol, revolver, stun gun or taser or

-6-

other firearm; [and]

*** 

    (3) One of the following factors is present:

        (A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense[.]" 720 ILCS 5/24–1.6(a)(1)(3)(A) (West 2004).

Thus, to prove aggravated unlawful use of a weapon under this section, there must be evidence that the firearm was (1) uncased, (2) loaded, and (3) immediately accessible. Defendant contends that the State failed to prove beyond a reasonable doubt that he possessed an uncased gun where the uncontested evidence established that the gun was fully encased inside a closed, latched compartment.[1] Accordingly, defendant maintains that his conviction cannot be sustained under count I.

In *Diggins*, we were called upon to interpret the meaning of the word "case" as used in the unlawful use of weapon statute, although with reference to the exceptions contained in paragraph (c) of section 24–1.6.[2] Looking to the plain and ordinary definition of "case"

---

[1]Defendant acknowledges he did not raise this uncased argument before the appellate court or in his petition for leave to appeal. However, he maintains this is a challenge to the sufficiency of the evidence, based on our decision in *People v. Diggins*, 235 Ill. 2d 48 (2009), and that this claim is not subject to forfeiture. The State informed this court at oral argument that it was not advancing any forfeiture argument since *Diggins* had not been decided when defendant filed his petition for leave to appeal and because defendant's assertion that the gun was enclosed in a case presents a challenge to the sufficiency of the evidence.

[2]This paragraph provides:

    "(c) This Section does not apply to or affect the transportation or possession of weapons that:

        (i) are broken down in a non-functioning state; or

        (ii) are not immediately accessible; or

        (iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card." 720 ILCS 5/24–1.6(c) (West 2004).

(*Diggins*, 235 Ill. 2d at 55), we concluded that the center console of a vehicle is a case (*id*. at 58). As such, the defendant's conduct in *Diggins*, storing two unloaded handguns in the center console, fell within the exception outlined in paragraph (c). Accordingly, we found that the trial court erred in refusing the defendant's proposed jury instruction based on that section and erred in refusing to permit the defendant to argue the console was a case in his closing argument. *Id*. at 58. We remanded the cause for a new trial because a factual question remained as to whether the handguns were "enclosed" since there was conflicting evidence on whether the console was closed or ajar. *Id*. at 58.

In this case, the gun was retrieved from the back armrest, which Officer Gonzalez himself described as a "compartment." As with the front seat console in *Diggins*, we conclude that this backseat armrest, which contained a cover and latch, falls within the meaning of a case under section 24–1.6. Moreover, the evidence is undisputed that the armrest was closed and latched. As such, the gun was enclosed in a case.

Because the firearm was enclosed in a case, the State failed to prove every element of the offense of aggravated unlawful use of a weapon as outlined in section 24–1.6(a)(1)(3)(A). Accordingly, a conviction for aggravated unlawful use of a weapon, as charged in count I, cannot stand.

Although defendant's conviction for aggravated unlawful use of a weapon cannot stand under count I, our inquiry does not end here. The jury returned a general verdict of guilty. It is well established in Illinois that where an indictment contains several counts arising out of a single transaction and a general verdict is returned, the effect is that the defendant is guilty as charged in each count to which the proof is applicable. *People v. Cardona*, 158 Ill. 2d 403, 411 (1994). See also *Hiner v. People*, 34 Ill. 297, 304 (1864) (a rule of "uniform application" is that a general verdict may be sustained, although some counts are faulty, if there be "one good count"). Thus, we must determine whether defendant's conviction may be sustained under count II.

*Count II–Section 24–1.6(a)(1)(3)(C)*

Count II of the State's information charged defendant with aggravated unlawful use of a weapon based on carrying a firearm in his vehicle "at a time when he was not on his own land or in his own abode or fixed place of business" and had "not been issued a currently valid Firearm Owner's Identification Card" in violation of section 24–1.6(a)(1)(3)(C). Section 24–1.6(a)(1)(3)(C) provides:

> "(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:
>
> (1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode or fixed place of business any pistol, revolver, stun gun or taser or other firearm; [and]
>
> ***
>
> (3) One of the following factors is present:
>
> * * *
>
> (C) the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card[.]" 720 ILCS 5/24–1.6(a)(1)(3)(C) (West 2004).

Defendant contends that his conviction cannot be sustained under count II because, as an Indiana resident with a valid Indiana gun permit, he was exempt from the requirement of having a FOID card. In support of his argument, defendant points to section 2 of the FOID Card Act, which provides, in pertinent part:

> "(a)(1) No person may acquire or possess any firearm within this State without having in his or her possession a Firearm Owner's Identification Card previously issued in his or her name by the Department of State Police under the provisions of this Act.
>
> ***
>
> (b) The provisions of this Section regarding the possession of firearms and firearm ammunition do not apply to:
>
> * * *
>
> (10) Nonresidents who are currently licensed or registered to possess a firearm in their resident state[.]"

430 ILCS 65/2 (West 2004).

The appellate court rejected this contention. According to the appellate court, there is "no authority suggesting that the exceptions in one [statute] are to be read into the other." We disagree.

Section 24–1.6(a)(1)(3)(C) of the unlawful use of a weapon statute states that the absence of a FOID card is an aggravating factor. In order to determine what a FOID card is and, therefore, whether section 24–1.6(a)(1)(3)(C) applies, reference must be made to the FOID Card Act. Thus, the FOID Card Act gives meaning to section 24–1.6(a)(1)(3)(C), and the statutes, by their own terms, must be read together.

We agree with defendant that the two statutes must be read together in order to avoid absurd results. Reading the statutes separately, as the appellate court did, would mean that an out-of-state resident who transports a firearm into Illinois when the firearm is legally registered in his home state would be exempt from misdemeanor prosecution under the FOID Card Act but that the same conduct would subject such individual to felony prosecution under section 24–1.6(a)(1)(3)(C). This cannot be what the legislature intended. Reading these statutes together, as we must, we find that the exception identified in section 2(b)(10) of the FOID Card Act can be applied to the unlawful use of weapons statute and, therefore, a valid permit or license from another state can substitute for the FOID card requirement in section 24–1.6. Accordingly, we hold that the exception contained in section 2(b)(10) must be incorporated in the unlawful use of weapons act.

The State argues that, even if the exception contained in section 2(b)(10) applies to the unlawful use of weapons statute, defendant cannot avail himself of that exception because he did not have his Indiana permit in his possession at the time of his arrest. According to the State, this is a requirement in order to invoke the exception. We disagree.

The unlawful use of a weapon statute provides that it is an aggravating factor where the defendant "has not been issued a currently valid FOID card." The language of the unlawful use of a weapons statute only contemplates that a FOID card has been issued to that individual. There is no requirement in the unlawful use of

weapons statute that an individual have his or her FOID card or other similar permit in his or her possession. Accordingly, we reject the State's argument.

Based on our holding that the exception contained in section 2(b)(10) of the FOID Card Act applies to the unlawful use of weapons statute, we find that the trial court erred when it concluded that defendant's Indiana permit was irrelevant and prevented defendant from presenting this relevant evidence. If defendant had been able to produce evidence that he had been issued a valid Indiana permit, a conviction on count II would not have been proper since the aggravating factor contained in section 24–1.6(a)(1)(3)(C) would not be present. As such, the trial court's refusal to allow defendant to introduce the permit into evidence was prejudicial error. Accordingly, a conviction for aggravated unlawful use of a weapon, as charged in count II, cannot stand.

### Misdemeanor Unlawful Use of a Weapon

The State maintains that, if defendant's convictions for aggravated unlawful use of weapon cannot stand, then this court should enter judgment on the lesser-included offense of unlawful use of a weapon. See, *e.g.*, *People v. Rowell*, 229 Ill. 2d 82, 97 (2008) (" 'state and federal appellate courts have long exercised the power to reverse a conviction while at the same time ordering the entry of a judgment on a lesser-included offense' ") (quoting *People v. Knaff*, 196 Ill. 2d 460, 477-78 (2001)).

The unlawful use of a weapon statute provides:

"(a) A person commits the offense of unlawful use of weapons when he knowingly:

* * *

(4) Carries or possesses in any vehicle *** any pistol, revolver, stun gun or taser or other firearm, except that this subsection (a)(4) does not apply to or affect transportation of weapons that meet one of the following conditions:

(i) are broken down in a non-functioning state; or

(ii) are not immediately accessible; or

-11-

(iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card[.]" 720 ILCS 5/24–1(a)(4) (West 2004).

According to the State, it was established beyond a reasonable doubt at trial that the gun found in defendant's car was immediately accessible and that it was loaded. Therefore, in the State's view, the conditions listed in sections 24–1(a)(4)(ii) and 24–1(a)(4)(iii) of the unlawful use of a weapon statute are inapplicable and this court may properly reduce defendant's conviction to misdemeanor unlawful use of a weapon. We disagree.

Defendant was charged with two counts of aggravated unlawful use of a weapon. Count I was based on the aggravating factor that the "firearm possessed was uncased, loaded and immediately accessible at the time of the offense" (720 ILCS 5/24–1.6(a)(1)(3)(A) (West 2004)). Count II was based on the aggravating factor that "the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card" (720 ILCS 5/24–1.6(a)(1)(3)(C) (West 2004)). The jury returned a general verdict of guilty. Because the jury returned a general verdict, we cannot say that the jury unanimously concluded, as alleged in count I, that the gun was loaded and that it was immediately accessible. The jury may have based its verdict on a unanimous determination that defendant lacked a FOID card, the aggravating factor alleged in count II, or the verdict may have been based on some members agreeing with count I and some with count II. See, *e.g.*, *People v. Smith*, 233 Ill. 2d 1, 27 (2009) (holding that "when a defendant is charged with murder in multiple counts based on different theories, a general verdict finding the defendant guilty does not mean that the jury unanimously agreed that any one of the alleged means of committing the offense was proven beyond a reasonable doubt. It simply means that the jury unanimously agreed that the offense of murder was proven beyond a reasonable doubt. That determination can be based on any combination of findings with respect to the separate theories charged."). Further, the testimony at trial conflicted as to whether the gun was loaded or whether it was immediately accessible to defendant. Accordingly, on this record, we cannot say that it was proven at trial beyond a reasonable doubt that

the gun was loaded and that it was immediately accessible. Thus, we cannot reduce defendant's conviction to misdemeanor unlawful use of a weapon.

## Conclusion

For the foregoing reasons, we reverse the judgments of the appellate court and circuit court and remand this cause to the circuit court for proceedings consistent with this opinion.


Appellate court judgment reversed;

circuit court judgment reversed;

cause remanded.


JUSTICE GARMAN, specially concurring:

I join the majority's decision to reverse the appellate court and its specific holdings in this case. However, I write separately to explain why I believe the majority correctly held that the exception contained in the FOID Card Act for nonresidents whose firearm is licensed in his or her home state should be read into the aggravated unlawful use of a weapon statute.

The principles we follow when approaching a question of statutory construction are familiar:

> "The primary rule of statutory construction is to ascertain and give effect to the intention of the legislature. The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. The statute should be evaluated as a whole, with each provision construed in connection with every other section." *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 216-17 (2008).

It is only where the meaning of a statute is not plain on its face that we resort to other tools of statutory construction. *Id*. at 217. In this case, the aggravated unlawful use of a weapon (AUUW) statute includes two provisions which reference a firearm owner's identification card. 720 ILCS 5/24–1.6(a)(1)(3)(C), (c) (West 2008). To determine what a FOID card is and, therefore, whether either of these provisions

applies, reference must be made to the FOID Card Act. When two statutes relate to the same subject, we presume that the legislature intended them to be harmonious and will "construe them with reference to each other, so as to give effect to all of the provisions of each if possible." *Cinkus*, 228 Ill. 2d at 218. We further presume "that statutes which relate to one subject are governed by one spirit and a single policy." *People v. Maya*, 105 Ill. 2d 281, 286 (1985). Therefore, the FOID Card Act must inform our understanding of the FOID card requirement as laid out in the AUUW statute.

The AUUW statute makes two references to the FOID card. First, it is an aggravating factor when the person possessing a firearm has not been issued a currently valid FOID card. 720 ILCS 5/24–1.6(a)(1)(3)(C) (West 2008). Second, the AUUW statute exempts the transportation or possession of weapons that "are unloaded and enclosed in a case, *** by a person who has been issued a currently valid Firearm Owner's Identification Card." 720 ILCS 5/24–1.6(c)(iii) (West 2008). Reading the AUUW statute as the State suggests, to require an Illinois-issued firearm owner's identification card, would mean that a nonresident who has not obtained an Illinois FOID card would be subject to prosecution for the felony of AUUW even when carrying a firearm that is unloaded and enclosed in a case. However, this is contrary to the clearly articulated legislative intent expressed in the FOID Card Act.

The FOID Card Act requires an individual to have in his or her possession a FOID card in order to acquire or possess any firearm, stun gun, taser, or firearm ammunition. 430 ILCS 65/2(a)(1), (a)(2) (West 2008). The Act makes 16 enumerated exceptions to this requirement (430 ILCS 65/2(b)(1) through (b)(16) (West 2008)), in addition to a broad exception for law enforcement officials of any jurisdiction (430 ILCS 65/2(c) (West 2008)). Many of the exceptions are specifically for nonresidents. 430 ILCS 65/2(b)(5), (b)(7), (b)(8), (b)(9), (b)(10), (b)(13) (West 2008). Three of those exceptions list specific situations where the nonresidents do not require a FOID card, and then note that "at all other times and in all other places these persons must have their firearms unloaded and enclosed in a case." 430 ILCS 65/2(a)(5) (nonresident hunters during hunting season with valid nonresident hunting licenses and while in an area where hunting is permitted), (a)(8) (nonresidents at a firearm showing or display)

(West 2008); see also 430 ILCS 65/2(a)(7) (West 2008) (nonresidents on a firing or shooting range). Another exception exempts any nonresident whose firearm is "unloaded and enclosed in a case" generally. 430 ILCS 65/2(a)(9) (West 2008). The plain language of these exceptions indicates a legislative intent to allow nonresidents to possess a firearm in Illinois whenever the weapon is unloaded and enclosed in a case without requiring them to have an Illinois FOID card.

As the majority points out, if we were to strictly apply the FOID card requirement in the AUUW statute, as the State suggests, nonresidents whose weapons are unloaded and enclosed in a case but who do not have an Illinois FOID card would be guilty of a felony under section 24–1.6(a)(1)(3)(C), but not of the misdemeanor of possession under the FOID Card Act. Further, the positive language instructing nonresidents to keep their firearms unloaded and enclosed in a case "at all other times and in all other places" would be rendered meaningless. Thus, to give full effect to the legislature's express intent and to avoid absurd results, I agree with the majority's conclusion that the statutes must be read together and that the exception contained in the FOID Card Act for nonresidents licensed to carry a gun in their home state must be read into the AUUW statute.