NOTICE

Decision filed 12/18/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230212-U

NOS. 5-23-0212, 5-23-0213, 5-23-0214 cons.

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

NO. 5-23-0212

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 21-CF-1750 |
| | ) | |
| JAMIL FEDRICK, | ) | Honorable |
| | ) | Robert B. Haida, |
| Defendant-Appellee. | ) | Judge, presiding. |

NO. 5-23-0213

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 22-CF-548 |
| | ) | |
| JORDAN QUINN, | ) | Honorable |
| | ) | Robert B. Haida, |

1

NO. 5-23-0214

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 22-CF-397 |
| | ) | |
| ALVIN PETERSON, | ) | Honorable |
| | ) | Robert B. Haida, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE BOLLINGER* delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We reverse and remand where the circuit court exceeded its authority in granting defendants' motions to dismiss by considering facts outside the charging instrument and making factual determinations in ruling that the aggravated unlawful use of a weapon charges violated defendants' due process rights on the basis that it was not possible for defendants to acquire a FOID card.

¶ 2    Defendants-appellees, Jamil A. Fedrick Sr., Jordan C. Quinn, and Alvin L. Peterson, were all charged with aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2020)) for knowingly carrying handguns in their respective vehicles without having a currently valid Firearm Owner's Identification (FOID) card. Prior to any trial, motions to dismiss were filed, asserting that defendants were protected by the exception in the Firearm

---

*Justice Welch was originally assigned to the panel before his death. Justice Bollinger was later substituted on the panel and has listened to oral arguments and read the briefs.

Concealed Carry Act (Concealed Carry Act) (430 ILCS 66/40(e) (West 2020)), and therefore dismissal was necessary under section 114-1(a)(8) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-1(a)(8) (West 2020)). In Fedrick and Peterson, a hearing was held on the motions to dismiss, and in the hearings, defendants also asserted that police officers violated their due process rights because the officers conducting the traffic stops did not act according to their reading of section 10(h) and (h-1) of the Concealed Carry Act (430 ILCS 66/10(h), (h-1) (West 2020)), by not releasing them and their firearms after they were determined not to be a threat. The circuit court dismissed the AUUW charge for all three defendants pursuant to the charges being a due process violation, finding that "it is not possible for the defendant[s] to obtain a FOID card."

¶ 3      The State now appeals the dismissals, asserting that the charging instruments sufficiently charged an offense. The State asserts that the circuit court erred when it determined that defendants' due process rights were violated as it was impossible for defendants to comply with the AUUW statute as charged because there are exceptions under the FOID Card Act (430 ILCS 65/2(b) (West 2020)) that provide exceptions for individuals who are not residents of Illinois. The State further asserts that dismissal under section 114-1(a)(8) is unwarranted because the charges sufficiently alleged an offense, and dismissal under the Concealed Carry Act is unwarranted because the FOID Card Act and the Concealed Carry Act should not be read together in this respect. Defendants on appeal argue in response that the circuit court was correct in finding a due process violation, where confusion of the law between the Concealed Carry Act and the FOID Card Act creates a lack of notice for proscribed conduct, and that the FOID Card Act and the Concealed Carry Act should be read together in this respect. For the following reasons, we reverse the dismissal of the circuit court and remand these cases for further proceedings.

¶ 4                                    I. BACKGROUND

¶ 5     On October 15, 2021, Fedrick was charged with AUUW in violation of section 24-1.6(a)(1), (a)(3)(C) of the Criminal Code of 2012 (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2020)) in that he "knowingly carried in a vehicle a 9 millimeter handgun at a time when he was not on his own land, in his own abode, or a fixed place of business, and he had not been issued a currently valid Firearm Owner's Identification Card." During a hearing on January 30, 2023, the following facts were stipulated to: (1) defendant had no felony convictions in any state; (2) defendant did not have a FOID card; (3) defendant was in his vehicle at the time of the offense, and so was his firearm; (4) defendant was a Missouri resident, not an Illinois resident; (5) the firearm was found in the vehicle, after a traffic stop where a search was conducted; (6) the firearm was found in a diaper bag sitting between defendant's legs; and (7) the firearm was loaded with 28 9-millimeter rounds and had an extended magazine. Defendant also noted that he informed the officer of the firearm's presence.

¶ 6     On April 10, 2022, Quinn was charged with AUUW in violation of section 24-1.6(a)(1), (a)(3)(C) of the Criminal Code of 2012 (*id.*) in that he "knowingly carried in a vehicle a Glock 27 firearm at a time when he was not on his own land, in his own abode, or a fixed place of business, and he had not been issued a currently valid Firearm Owner's Identification Card." During a hearing on January 30, 2023, the following facts were stipulated to: (1) defendant was a Missouri resident at the time of the incident; (2) defendant had a clean criminal history that would not prevent him from owning or using a firearm; (3) defendant did not have a FOID card; (4) a traffic stop was conducted, wherein defendant gave consent for the officer to search his vehicle; (5) a Glock 27 .40-caliber handgun, multiple magazines, and live rounds of ammunition were found in

4

the vehicle; and (6) the firearm was found in the floorboard of the vehicle, unloaded under the driver's seat.

¶ 7     On March 17, 2022, Peterson was charged with two counts, one unrelated to this appeal, and the other of AUUW in violation of section 24-1.6(a)(1), (a)(3)(C) of the Criminal Code of 2012 (*id.*) in that he "knowingly carried in a vehicle a 9 millimeter handgun at a time when he was not on his own land, in his own abode, or a fixed place of business, and he had not been issued a currently valid Firearm Owner's Identification Card." During a hearing on January 30, 2023, the parties stipulated that defendant was a Missouri resident at the time of the incident, he had a clean criminal history, and he did not possess a FOID card. The State proffered the following facts: (1) a sergeant for the Swansea Police Department was dispatched to a residence after a call that a vehicle had been idling outside of the home for 10 minutes; (2) when the sergeant encountered defendant, he was in the driver's seat of the vehicle, the sergeant smelled the odor of alcohol on his breath, and observed that he had watery eyes; (3) the sergeant conducted a field sobriety test and determined that defendant was driving under the influence of alcohol; and (4) after defendant was arrested, an inventory search of the vehicle was conducted and a 9-millimeter Glock firearm was discovered in the vehicle. Both defendant and the State agreed the firearm was unloaded. There was, however, a dispute on where the firearm was located; defendant asserted that the firearm was in his glove compartment and the State contended it was found in the floorboard of the backseat.

¶ 8     Despite the differing facts giving rise to the charges, each defendant's case was conducted similarly and came to a similar result. Defendants, all Missouri residents, were charged under the AUUW statute for failing to currently have a valid FOID card. Defendants all filed a motion to dismiss on November 23, 2022, asserting that the Concealed Carry Act exception (430 ILCS 66/40(e) (West 2020)) applied to them because they were Missouri residents who did not have a

5

FOID card or concealed carry license, and Missouri does not require concealed carry licenses to legally concealed carry. The motions to dismiss contended that, since the Concealed Carry Act exception applies, dismissal of the charges was warranted under section 114-1(a)(8) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-1(a)(8) (West 2020)).

¶ 9        A hearing was held in each case on January 30, 2023, wherein the stipulated facts were provided and some argument was made on each side. In the hearings, defendants argued that the Concealed Carry Act's exception allowed nonresidents to carry in their vehicles in these contexts, and since defendants were Missouri residents, and residents of Missouri can legally possess and use a firearm without any license or permit, defendants would not need to present the evidence of such, as section 40(e)(2) would not apply to them. The State responded in each case that defendants were not charged for not having a concealed carry license, such that the exception to the Concealed Carry Act would apply, but rather that defendants were charged for not having a FOID card and, as such, an exception to the Concealed Carry Act, a separate act, would not relieve defendants of their charges. The State also argued that none of the exceptions to the FOID Card Act would apply to these cases. In the hearing, the circuit court voiced its concern that the discussion of exceptions to either act was ill-placed for a dismissal pursuant to section 114-1(a)(8).

¶ 10      In Fedrick and Peterson the circuit court held an additional hearing on February 24, 2023. In the hearing, defendants made the additional argument that section 10(h) and (h-1) of the Concealed Carry Act (430 ILCS 66/10(h), (h-1) (West 2020)) require that nonresidents be released with their firearm returned unless officers determine a mental health issue existed, or that the individual was a physical threat. Defendants argued that, because officers did not comply with subsections (h) and (h-1), defendants' due process rights were violated. The circuit court also noted in each case that it was impossible for defendants to get FOID cards because they were Missouri

6

residents. On March 6, 2023, an order was filed in all three cases, using identical language. The order stated, "The court finds that it would be a violation of the defendants' due process rights and a miscarriage of justice to require the defendant to defend himself against the charge of failing to have a FOID card issued by the State of Illinois (Illinois State Police) when it is not possible for the defendant to obtain a FOID card from the State of Illinois (Illinois State Police)." In the order, the circuit court also miscited the charge as a "violation of 430 ILCS 65/14, commonly known as the 'FOID' statute." The State filed timely appeals in each case. All three cases have been consolidated for the purpose of appeal.

¶ 11                                    II. ANALYSIS

¶ 12    The State argues on appeal that the circuit court erred when it dismissed AUUW charges for defendants on due process grounds. The State also argues that dismissal for failure to state an offense is not warranted, nor is dismissal under the Concealed Carry Act. Defendants argue in response that dismissal under the Concealed Carry Act would have been proper. Defendants also argue that dismissal for a violation of due process was proper here. For the following reasons, we find that the circuit court erred when it dismissed these criminal informations on due process grounds and erred when it considered extrinsic facts outside the charging instruments in granting defendants' motions to dismiss.

¶ 13                          A. Due Process Dismissal

¶ 14    The State asserts that the circuit court erred when it dismissed these criminal informations on due process grounds. Defendants argue on appeal that dismissal on due process grounds is warranted, where defendants were not given proper notice that their conduct was unlawful due to the asserted competing nature of the Concealed Carry Act and the FOID Card Act.

7

¶ 15  A circuit court has "inherent authority to dismiss an indictment for reasons other than those listed in section 114-1(a)" and may exercise said authority when failure to do so will "effect a deprivation of due process or result in a miscarriage of justice" (internal quotation marks omitted). *People v. Newberry*, 166 Ill. 2d 310, 313-14 (1995). "[A] basic principle of due process" is that prohibitions in laws must be "clearly defined" so that a "person of ordinary intelligence [has] a reasonable opportunity to know what is prohibited." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "Generally, a reviewing court considers a trial court's ultimate ruling on a motion to dismiss charges under an abuse-of-discretion standard, but where the issues present purely legal questions, the standard of review is *de novo*." *People v. Stapinski*, 2015 IL 118278, ¶ 35. Whether defendant was denied due process is a question of law, which is reviewed *de novo*. *Id.*

¶ 16  The AUUW statute provides as follows:

"A person commits the offense of aggravated unlawful possession of a weapon when he or she knowingly *** [c]arries *** in any vehicle *** except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm *** and *** the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card[.]" 720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2020).

¶ 17  "[T]he FOID Card Act gives meaning to section 24-1.6(a)(1)(3)(C), and the statutes, by their own terms, must be read together." *People v. Holmes*, 241 Ill. 2d 509, 521 (2011). A person who is not a resident of Illinois cannot receive or keep a FOID card pursuant to the FOID Card Act. See 430 ILCS 65/8(q) (West 2020). There are a number of exceptions to the FOID Card Act; six of which are specifically relevant for nonresidents. See *id.* § 2(b)(5), (7)-(10), (13). More

8

specifically, subsection (b)(9) provides an exception for "[n]onresidents whose firearms are unloaded and enclosed in a case," and subsection (b)(10) provides an exception for "[n]onresidents who are currently licensed or registered to possess a firearm in their resident state." *Id.* § 2(b)(9), (10).

¶ 18    In the circuit court, defendants asserted that section 40(e) of the Concealed Carry Act also provided an exception to the requirements of the FOID Card Act and AUUW, decriminalizing their conduct. Section 40(e) provides:

"Nothing in this Act shall prohibit a non-resident from transporting a concealed firearm within his or her vehicle in Illinois, if the concealed firearm remains within his or her vehicle and the non-resident:

(1) is not prohibited from owning or possessing a firearm under federal law;

(2) is eligible to carry a firearm in public under the laws of his or her state or territory of residence, as evidenced by the possession of a concealed carry license or permit issued by his or her state of residence, if applicable; and

(3) is not in possession of a license under this Act." *Id.* § 40(e).

¶ 19    In Fedrick and Peterson, defendants also asserted that pursuant to section 10(h) and (h-1), their due process rights were violated. More specifically, they argued that subsections (h) and (h-1) of the Act require officers to release nonresidents and return their firearms unless officers determine a mental health issue existed, or that the individual was a physical threat. Defendants argued that, because officers did not comply with subsections (h) and (h-1), their due process rights were violated.

¶ 20    Subsection (h) provides:

"If an officer of a law enforcement agency initiates an investigative stop, including but not limited to a traffic stop, of a *** non-resident carrying a concealed firearm under subsection (e) of Section 40 of this Act, upon the request of the officer the *** non-resident shall disclose to the officer that he or she is in possession of a concealed firearm under this Act, or *** present upon the request of the officer evidence under paragraph (2) of subsection (e) of Section 40 of this Act that he or she is a non-resident qualified to carry under that subsection. The disclosure requirement under this subsection (h) is satisfied if *** the non-resident presents to the officer evidence under paragraph (2) of subsection (e) of Section 40 of this Act that he or she is qualified to carry under that subsection. Upon the request of the officer, the *** non-resident shall also identify the location of the concealed firearm and permit the officer to safely secure the firearm for the duration of the investigative stop. During a traffic stop, any passenger within the vehicle who is a licensee or a non-resident carrying under subsection (e) of Section 40 of this Act must comply with the requirements of this subsection (h)." *Id.* § 10(h).

¶ 21    Subsection (h-1) provides:

"If a *** non-resident carrying a firearm in a vehicle under subsection (e) of Section 40 of this Act is contacted by a law enforcement officer ***, the law enforcement officer *** may secure the firearm or direct that it be secured during the duration of the contact if the law enforcement officer *** determines that it is necessary for the safety of any person present, including the law enforcement officer ***. The *** nonresident shall submit to the order to secure the firearm. When the law enforcement officer *** ha[s] determined that the *** non-resident is not a threat to the safety of any person present, including the law enforcement officer ***, and if the *** non-resident is physically and mentally capable

10

of possessing the firearm, the law enforcement officer *** shall return the firearm to the *** non-resident before releasing him or her from the scene and breaking contact. If the *** non-resident is transported for treatment to another location, the firearm shall be turned over to any peace officer. The peace officer shall provide a receipt which includes the make, model, caliber, and serial number of the firearm." *Id.* § 10(h-1).

Ultimately, the circuit court dismissed all three cases, stating that it was impossible for defendants to acquire a FOID card. The circuit court found that requiring defendants to defend against charges of not having a FOID card when it is not possible for defendants to obtain a FOID card violates their due process rights.

¶ 22    On appeal defendants' due process argument differs from their argument in the lower court. Now defendants argue that they did not have notice that their conduct was proscribed. By the terms of the FOID Card Act, and the AUUW crime of which they were charged, we find that the statutes provide defendants with adequate notice, such that a "person of ordinary intelligence [has] a reasonable opportunity to know what is prohibited." *Grayned*, 408 U.S. at 108. The statute very clearly prohibits a person from possessing a firearm who "has not been issued a currently valid Firearm Owner's Identification Card." 720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2020). Reading the crime in conjunction with the FOID Card Act's exceptions, these defendants could have easily avoided prosecution by keeping their firearms cased and unloaded. See 430 ILCS 65/2(b)(9) (West 2020) (providing an exception to the FOID Card Act for "[n]onresidents whose firearms are unloaded and enclosed in a case"). The FOID Card Act read in conjunction with the relevant AUUW statute is not so vague as to violate defendants' due process rights by not clearly proscribing conduct.

¶ 23 Further, any discussion of the Concealed Carry Act is misplaced as it relates to defendants' due process argument on appeal. These defendants were not charged under subsection (A-5) or (B-5), which require that the persons charged have "not been issued a currently valid license under the Firearm Concealed Carry Act"; therefore the Concealed Carry Act does not apply for the purpose of the defendants' due process notice argument. 720 ILCS 5/24-1.6(a)(3)(A-5), (B-5) (West 2020). It is well settled that it is within the prosecutor's discretion to choose which offense to charge. See *People v. Rhodes*, 38 Ill. 2d 389, 396 (1967) (stating, "The State's Attorney is the representative of the People and has the responsibility of evaluating the evidence and other pertinent factors and determining what offense can properly and should properly be charged."). The prosecutor in this case, having chosen to charge these defendants under the FOID Card Act, rather than the Concealed Carry Act provisions of the AUUW statute, has, in so doing, effectively removed consideration of the Concealed Carry Act from our analysis as it pertains to defendants' due process argument.

¶ 24 Finally, defendants in the circuit court misread section 10(h-1) as a requirement for officers to release *individuals* as a basis for their due process argument, rather than a requirement to release the individuals' *firearm* back into their possession before terminating the traffic stop. A plain reading of subsection (h) establishes that an individual with a concealed firearm must, upon request, notify an officer that they have a firearm and the location of the firearm, present their license that they can lawfully possess the firearm, or present evidence that they can lawfully possess the firearm, and they must also relinquish the firearm upon request. See 430 ILCS 66/10(h) (West 2020). A plain reading of subsection (h-1) establishes that police officers and emergency personnel may secure the firearm for the duration of their contact with the individual for the safety of anyone present, then officers or personnel must, after determining that the individual is not a

12

threat to anyone's safety and is mentally and physically capable of possessing the firearm, return the firearm to the individual before breaking contact with the individual. See *id.* § 10(h-1). Neither subsection requires police officers to release the *individual*. Rather, subsection (h-1) merely requires that officers *return the relinquished property* to the individual before breaking contact with the individual. Subsection (h-1) is not a basis to establish a violation of defendants' due process rights here. Further, at this stage there were no facts presented that established officers did or did not ask the questions in subsection (h) or made any determinations regarding whether defendants were a threat to anyone's safety, pursuant to (h-1).

¶ 25    Therefore, whether considering defendants' due process arguments as presented in the lower court or presented on appeal, defendants' due process rights were not violated. Since defendants' due process rights were not violated, dismissal of the charges was not warranted.

¶ 26                    B. Dismissal for Failure to State an Offense

¶ 27    The State next argues that this court cannot affirm dismissal based upon a motion filed pursuant to section 114-1(a)(8) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-1(a)(8) (West 2020)), which permits dismissal where the charging instrument fails to state an offense. We agree.

¶ 28    "Upon the written motion of the defendant made prior to trial before or after a plea has been entered the court may dismiss the indictment, information or complaint [where] [t]he charge does not state an offense." *Id*. A trial judge may dismiss criminal charges prior to trial for the reasons set forth in section 114-1. *People v. Williams*, 223 Ill. App. 3d 692, 703 (1992). When a pretrial motion challenges the sufficiency of a charge, our standard of review is to determine whether the charge complies with section 111-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/111-3 (West 2020)), "which requires that the charge be in writing and state the name of

13

the offense, the statutory provision allegedly violated, the name of the accused and the date and county of the offense, and set forth the nature and elements of the offense. If the charge meets these criteria, it should not be dismissed." *Williams*, 223 Ill. App. 3d at 703-04.

¶ 29 "[W]hen addressing a defendant's motion to dismiss a charge under section 114-1(a)(8), a trial court is strictly limited to assessing the legal sufficiency of the indictment, information, or criminal complaint and may not evaluate the evidence the parties might present at trial." *People v. Soliday*, 313 Ill. App. 3d 338, 342 (2000). "[N]either a trial court nor an appellate court can evaluate the evidence that the parties might present at trial when determining whether dismissal under section 114-1(a)(8) of the Procedural Code is appropriate." *Id.* at 343. As aptly stated in *People v. Close*, 238 Ill. 2d 497, 508 (2010):

"[I]t is the rule in this State that where an act is made criminal, with exceptions embraced in the enacting clause creating the offense, so as to be descriptive of it, the People must allege and prove that the defendant is not within the exceptions so as to show that the precise crime has been committed. In other words, where the exception is descriptive of the offense it must be negatived in order to charge the defendant with the offense. On the other hand, if the exception, instead of being a part of the description of the offense, merely withdraws certain acts or certain persons from the operation of the statute it need not be negatived, and its position in the act, whether in the same section or another part of the act, is of no consequence. [Citations.] Exceptions are generally mere matters of defense. [Citations.]" (Internal quotation marks omitted.)

¶ 30 In the circuit court, there was much discussion about potential exceptions to the crimes defendants were charged with and the facts that would comprise those exceptions. Specifically, much consideration was given to the facts that defendants were Missouri residents, and that

14

Missouri does not require its residents to have licenses, cards, or permits, to lawfully possess and use a firearm. Any consideration of such facts was erroneous. Circuit courts are bound by the four corners of the charging instrument when determining the grounds for dismissal on the basis of a failure to state an offense. See *People v. Romanik*, 2013 IL App (5th) 120213-U, ¶ 13. The State's *only* requirements to properly file charges here were that the charges were in writing, "(1) [s]tating the name of the offense; (2) [c]iting the statutory provision alleged to have been violated; (3) [s]etting forth the nature and elements of the offense charged; (4) [s]tating the date and county of the offense as definitely as can be done; and (5) [s]tating the name of the accused, if known, and if not known, designate the accused by any name or description by which he can be identified with reasonable certainty." 725 ILCS 5/111-3(a) (West 2020).

¶ 31    Fedrick's criminal information provides as follows:

"James Gomric of St. Clair County, Illinois in the name and by the authority of the people of the State of Illinois charges that Jamil A. Fedrick Sr[.] on or about the 15th day of October, 2021, in the County of St. Clair, in the State of Illinois Jamil A. Fedrick Sr[.] committed the offense of Aggravated Unlawful Use of a Weapon, in violation of Section 24-1.6(a)(1)(3)(C), Act 5.0, Chapter 720, ILCS, 2006, in that Jamil A Fedrick Sr[.], knowingly carried in a vehicle a 9mm handgun at a time when he was not on his own land, or in his own abode, or fixed place of business, and the said defendant had not been issued a currently valid Firearm Owner's Identification Card. A Class 4 Criminal Felony, Category B Offense."

Quinn's criminal information provides:

"James Gomric of St. Clair County, Illinois in the name and by the authority of the people of the State of Illinois charges that Jordan C. Quinn on or about the 10th day of April, 2022,

15

in the County of St. Clair, in the State of Illinois Jordan C. Quinn committed the offense of Aggravated Unlawful Use of a Weapon, in violation of Section 24-1.6(a)(1)(3)(C), Act 5.0, Chapter 720, ILCS, 2006, in that Jordan C. Quinn, knowingly carried in a vehicle a Glock 27 firearm at a time when he was not on his own land, or in his own abode, or fixed place of business, and the said defendant had not been issued a currently valid Firearm Owner's Identification Card. A Class 4 Criminal Felony, Category A Offense."

The relevant count in Peterson's criminal information provides:

"James Gomric of St. Clair County, Illinois in the name and by the authority of the people of the State of Illinois charges that Alvin L. Peterson on or about the 17th day of March, 2022, in the County of St. Clair, in the State of Illinois Alvin L. Peterson committed the offense of Aggravated Unlawful Use of a Weapon, in violation of Section 24-1.6(a)(1)(3)(C), Act 5.0, Chapter 720, ILCS, 2006, in that Alvin L. Peterson, knowingly carried in a vehicle a 9mm handgun at a time when he was not on his own land, or in his own abode, or fixed place of business, and the said defendant had not been issued a currently valid Firearm Owner's Identification Card. A Class 4 Criminal Felony, Category B Offense."

¶ 32    Each defendant's criminal information comports with section 111-3. Any discussion of exceptions to the charges, whether through the FOID Card Act, or through the Concealed Carry Act, could not lead to dismissal at this stage, as exceptions are matters of defense and therefore not subject to dismissal under section 114-1(a)(8). See *Close*, 238 Ill. 2d at 508. As such, because there were no due process violations necessitating dismissal, and dismissal could not appropriately be granted for failing to state an offense, we reverse the circuit court's dismissal of the criminal informations and remand for further proceedings.

¶ 33            C. The FOID Card Act and Concealed Carry Act Exceptions

¶ 34    First, we note that we have already ruled on the issues of this case: whether dismissal was proper on due process grounds or for failing to state an offense. However, as the issue of whether the section 40(e) exception to the Concealed Carry Act should apply to the AUUW crime of not having a valid FOID card is likely to arise on remand, we feel it would be helpful to provide some guidance to the circuit court and the parties.

¶ 35    On remand, the circuit court may consider the interaction a charge under section 24-1.6(a)(1), (a)(3)(C), for not having a valid FOID card, has with the FOID Card Act and the Concealed Carry Act, and how the acts apply to nonresidents who lawfully possess firearms in their home states, but whose home states do not require a license for such lawful possession. The FOID Card Act contains within it several exceptions for nonresidents, but none address the situation of a nonresident traveling in their vehicle in Illinois whose home states do not require a license to own and possess firearms, and who are in possession of a loaded or uncased firearm. The parties disagree about whether the section 40(e) exception to the Concealed Carry Act can be utilized as a defense for a nonresident that is charged under section 24-1.6(a)(1), (a)(3)(C) for not having a valid FOID card. In resolving this dispute, the circuit court may examine whether section 40(e) of the Concealed Carry Act can be utilized as a defense for the AUUW charge of not having a valid FOID card, as assuming these cases proceed upon remand, juries will need to be instructed regarding the applicable law in these cases. In determining whether section 40(e) can be utilized as a defense for the AUUW charge of not having a valid FOID card, the circuit court may examine the practical consequences of doing so, and the constitutional principles discussed both in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), and *People v. Aguilar*, 2013 IL 112116. As the impact of these cases should and will inform the circuit court's analysis, we discuss the constitutional

17

principles from those cases in order to guide the circuit court's analysis on remand, but do not resolve these questions here.

¶ 36    1. *Moore*, *Aguilar*, and the Resulting Amendments to Illinois Statutes

¶ 37    In *Moore*, the Seventh Circuit Court of Appeals reviewed a prior version of the AUUW statute (720 ILCS 5/24-1.6 (West 2008)). *Moore*, 702 F.3d at 934. That version of the AUUW statute provided:

"A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode or fixed place of business any pistol, revolver, stun gun or taser or other firearm; or

(2) Carries or possesses on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his or her own land or in his or her own abode or fixed place of business, any pistol, revolver, stun gun or taser or other firearm; and

(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or

(B) the firearm possessed was uncased, unloaded and the ammunition for the weapon was immediately accessible at the time of the offense[.]" 720 ILCS 5/24-1.6(a)(1), (a)(2), (a)(3)(A), (a)(3)(B) (West 2008).

18

¶ 38    In *Moore*, defendants challenged the AUUW statute for constitutionality under the second amendment (U.S. Const., amend. II). *Moore*, 702 F.3d at 934. The court analyzed the cases of *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010). *Moore*, 702 F.3d at 935-36. It determined that both cases held that the second amendment protects the right to keep and bear arms for the purpose of self-defense. *Id.* at 935. Going further, it stated that both cases provide that the need for defense of self, family, and property is most acute in the home, but posited that "that doesn't mean it is not acute outside the home" as "[c]onfrontations are not limited to the home." *Id.* at 935-36. The court determined that the term "bear" arms, rather than "keep" arms must imply a right to carry a loaded gun outside the home, and that historical context supported its reading of the term. *Id.* at 936-37. The court found the AUUW statute unconstitutional, reversed and remanded the case, but stayed its mandate for 180 days "to allow the Illinois legislature to craft a new gun law that will impose reasonable limitations, consistent with the public safety and the Second Amendment as interpreted in this opinion, on the carrying of guns in public." *Id.* at 942.

¶ 39    The next year, our supreme court in *People v. Aguilar*, 2013 IL 112116, dealt with a similar issue regarding the same version of the AUUW statute and its constitutionality as it relates to the second amendment. Our supreme court in *Aguilar* reviewed the Supreme Court's decisions in *Heller* and *McDonald*, as well as the Seventh Circuit Court of Appeals' decision in *Moore*. *Aguilar*, 2013 IL 112116, ¶¶ 16-22. Our supreme court followed *Moore*, agreeing that the right to self-defense through the second amendment extends outside of the home. Our supreme court stated, "Of course, in concluding that the second amendment protects the right to possess and use a firearm for self-defense outside the home, we are in no way saying that such right is unlimited or is not subject to meaningful regulation." *Id.* ¶ 21. The court stated further, "That said, we cannot escape

19

the reality that, in this case, we are dealing not with a reasonable regulation but with a comprehensive ban." *Id.* The court noted that the then-current form of the AUUW statute "categorically prohibits the possession and use of an operable firearm for self-defense outside the home." *Id.* The court stated that it would never permit "a wholesale statutory ban on the exercise of a personal right that is specifically named in and guaranteed by the United States Constitution, as construed by the United States Supreme Court." *Id.* The court found the challenged portion of the statute was unconstitutional on its face. *Id.* ¶ 22.

¶ 40    Following *Moore*, and in the same year *Aguilar* was decided, Public Act 98-63 passed, creating the Concealed Carry Act and amending the AUUW statute. Although the Concealed Carry Act was created and the AUUW statute was amended in response to *Moore* and *Aguilar*, exceptions under the FOID Card Act for nonresidents in the present context were not altered. The circuit court may consider the foregoing authorities if called upon to determine whether section 40(e) of the Concealed Carry Act can be utilized as a defense for the AUUW charge of not having a valid FOID card upon remand.

¶ 41                                III. CONCLUSION

¶ 42    For the foregoing reasons, we reverse the circuit court of St. Clair County's dismissal of the criminal informations as to each defendant and remand for further proceedings consistent with this order.

¶ 43    Reversed and remanded.